McCLANAHAN OIL CO. v. PERKINS.

1. MINES AND MINERALS—CONSTRUCTION OF OIL AND GAS LEASES.
   The ordinary rules of construction of contracts govern the construction of oil and gas leases except when they contain ambiguities or repugnance in terms which are matters strictly construed in favor of the lessor.

2. SAME—OIL AND GAS LEASES—HABENDUM CLAUSE—EXTENSION OF TERM.
   The habendum clause of an oil and gas lease controls and fixes the definite time within which actual production must be obtained except as the lease contains an express provision for extending the term until a well on which drilling had been commenced before the term expired could be completed.

3. Same—Failure to Complete Producing Well During Term of Habendum Clause—Extension of Term.

Under oil and gas lease expressly providing that it should remain in force so long as drilling operations are prosecuted and, if production results therefrom, then as long as production continues, notwithstanding anything in the lease to the contrary, where a well was commenced but not completed before expiration of five-year term of habendum clause, and gas found and produced therefrom, the lease remained in full force and effect.

Appeal from Clare; Hart (Ray), J. Submitted October 7, 1942. (Docket No. 20, Calendar No. 42,032.) Decided November 25, 1942. Rehearing denied January 19, 1943.

Bill by McClanahan Oil Company, a Michigan corporation, against Levi R. Perkins, Lela B. Perkins, and others for cancellation of a gas lease, for an accounting and other relief. Bill dismissed. Plaintiff appeals. Reversed.

*McNamara & Browning (Cook, Smith, Jacobs & Beake,* of counsel), for plaintiff.

*Donald E. Holbrook* and *Willian E. Knorr,* for defendant Levi R. Perkins.

Butzel, J. On the 31st day of July, 1933, the McClanahan Oil Company, plaintiff and appellant, as lessee, entered into an oil and gas lease with Adde McCall, as lessor. The lease, which was duly recorded, gave lessee oil and gas rights in approximately 700 acres in Freeman township, Clare county, Michigan. L. R. Perkins and Lela B. Perkins acquired title, subject to the lease, by mesne conveyances from Adde McCall. The rights and obligations of Taggart Bros., Inc., and the American

Michigan Pipe Line Company, who are mere stakeholders, and are joined as defendants, will be governed by the decision of the main controversy between plaintiff and defendants Perkins. The following are the pertinent paragraphs of the lease which give rise to the controversy:

"2. This lease shall remain in force for a term of five (5) years and as long thereafter as * * * gas * * * is or can be produced. * * *

"4. The lessee shall pay lessor, as royalty, one-eighth of the proceeds from the sale of the gas, as such, for gas from wells where gas only is found, and where not sold shall pay fifty ($50) dollars per annum as royalty from each such well, and while such royalty is so paid such well shall be held to be a producing well under paragraph numbered two hereof. * * *

"5. If operations for the drilling of a well for oil or gas are not commenced on said land on or before 3 months from this date, this lease shall terminate as to both parties, unless the lessee shall, on or before 3 months from this date, pay or tender to the lessor * * * the sum of eighty-seven and 50/100 dollars ($87.50), which shall operate as rental and cover the privilege of deferring the commencement of drilling operations for a period of 3 months. In like manner * * * the commencement of drilling operations may be further deferred for like periods successively. * * *

"12. Notwithstanding anything in this lease contained to the contrary, it is expressly agreed that if lessee shall commence drilling operations at any time while this lease is in force, this lease shall remain in force and its term shall continue so long as such operations are prosecuted and, if production results therefrom, then as long as production continues."

Plaintiff made quarterly payments of $87.50 during the five years from and after July 31, 1933, to

Perkins or his predecessors in title. On July 9, 1938, while the lease was in full force and effect, oil was discovered in the same township and not far from the leased lands. On July 12, 1938, plaintiff notified Perkins in writing that it intended to begin drilling operations under the lease prior to July 31, 1938. On July 23d such actual drilling was begun, and operations were continued diligently until August 20, 1938, when gas in commercial quantities was discovered. The gas was cemented off and deeper drilling was undertaken in the hope of discovering oil. On September 20, 1938, such drilling was abandoned, the casing at the location of the gas well gun-perforated, and commercial production reestablished, the gas being capped to await sale. Appellant claims that it spent in excess of $6,000 in drilling on the premises prior to July 31, 1938, and an additional $6,000 subsequent thereto until September 20, 1938. On September 19, 1938, an agreement was entered into between plaintiff and defendant Taggart Bros., Inc., for the purpose of bringing about a market for the available gas. An assignment of the shallow gas rights was subsequently made by plaintiff to Taggart Bros., Inc. In October, 1939, the latter established a market for the gas through the American Michigan Pipe Line Company, and a fund in excess of $5,000 is now being withheld by the stakeholders.

The question presented is whether paragraph 12 extended the term clause of the lease. The trial court held that it did not. We find it unnecessary to discuss the peculiarities of oil and gas leases in general. They are usually speculative in character, being more in the nature of options, and when there are any ambiguities or repugnance the terms of the lease are strictly construed in favor of the lessor. Oil and gas leases have some terminology not found

in other contracts, but, except as hereinbefore stated, the ordinary rules of construction of contracts govern.

The trial judge held that clause 12 and clause 2 were in conflict and, therefore, clause 2 must prevail. He also held that defendants Perkins are not estopped by their conduct from claiming the termination of the lease. We need not discuss the latter question in view of our holding that clause 12 extended the term or habendum clause of the lease.

Both parties devote much time to the discussion of the case of *J. J. Fagan & Co.* v. *Burns,* 247 Mich. 674 (67 A. L. R. 522). Defendants Perkins claim that the phraseology of paragraph 12 is not only ambiguous, but negatives clause 2 limiting the term; that clause 12 lacks the clarity and certainty also found wanting in the lease in *J. J. Fagan & Co.* v. *Burns, supra.* The provisions of the lease in the *Fagan Case* were different, for there was an absolute limitation in the term clause of five years, and the subsequent clause cast some doubt upon whether the lease was extended or not by the beginning of operations prior to the expiration of the five-year term of the lease. That doubt was resolved in favor of the lessor under the peculiar wording of the lease, and the general rule that the lease is strictly construed against the lessee. Mr. Justice FEAD, in discussing the lease in the *Fagan Case,* p. 681, speaks of:

"the criticism by the profession of some of the producers forms because they do not cover the contingency of expiration of the lease while the well is being drilled,"

and of

"the ease with which, by a few apt words, an extension of the term could be provided."

These few apt words were used in paragraph 12 of the lease in the instant case. The law is stated in Glassmire, Oil and Gas Leases and Royalties (2d Ed.), p. 195, as follows:

"The question has arisen as to whether or not the commencement of a well during the last year or on the last day of the five years' term (which is also the last year or day of the extended rental period in which it might be commenced) would extend the lease beyond its primary term until such commenced well could be completed. Most lease forms cover this emergency by incorporating an express provision extending the lease until completion and thereafter as long as production is obtained. But in lieu of such express provision, the courts have very generally held that the habendum clause controls and fixes the definite time within which actual production must be obtained."

We believe in the instant case the objections to the lease in *J. J. Fagan & Co.* v. *Burns, supra,* were overcome, for clause 12 distinctly states that:

"Notwithstanding anything in this lease contained to the contrary, it is expressly agreed that if lessee shall commence drilling operations at any time while this lease is in force, this lease shall remain in force and its term shall continue so long as such operations are prosecuted and, if production results therefrom, then as long as production continues."

The conditions of paragraph 12 have been fulfilled.

Some argument is made that inasmuch as paragraph 12 comes at the end of the lease, and it is repugnant to paragraph 2, the former paragraph shall prevail. Paragraph 12 distinctly refers to anything in the lease to the contrary. There was no ambiguity or repugnance created by placing clause 12 after paragraph 2.

We believe the judge was in error in dismissing plaintiff's bill to establish its rights under the lease. It remained in full force and effect, and the decree of the lower court is reversed, with costs of both courts to plaintiff. A decree may be entered herein reversing the decision of the trial court and remanding the case to the trial court to determine the exact amount due plaintiffs and the entry of such further orders not inconsistent with this opinion as may be necessary in the premises.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.