MICHIGAN CONSOLIDATED GAS COMPANY *v.* MUZECK.

BEIER *v.* ST. CLAIR PROBATE JUDGE.

1. GAS—NATURAL GAS STORAGE FIELD—STATUTORY REQUIREMENT.

Condemnor of right to use land for underground natural gas storage field complied with statute requiring acquisition of at least 75% of property rights and interests, computed in respect to surface area, in such underground field, by means other than condemnation, when it showed that it had acquired the right to store gas underground from landowners of more than 75% of the surface area, and also that it had acquired the right to take the native gas in the storage formation under more than 75% of the surface area of the land (CL 1948, § 486.252, as amended by PA 1961, No 69).

2. SAME—PART OF LAND.

Gas not yet captured is a part of the land under which it is located.

3. SAME—LAW OF CAPTURE.

The only ownership that one can have in unproduced oil and gas is the right, to the exclusion of others, to reduce the oil and gas to possession and thereby acquire title to it.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 7, 9] 26 Am Jur 2d, Eminent Domain § 141.
[2, 3] 24 Am Jur, Gas and Oil §§ 4, 5.
[4] 24 Am Jur, Gas and Oil §§ 39, 40.
[5, 6] 27 Am Jur 2d, Eminent Domain § 391.
[8] 50 Am Jur, Statutes § 223 *et seq.*

4. Same—Oil and Gas Lease.

> The exclusive right to explore for oil and gas and reduce it to possession becomes vested in a lessee under an oil and gas lease immediately upon execution of the lease.

5. Same—Form of Ownership—Statute—Condemnation Proceeding.

> The right to native gas is the material consideration in a condemnation proceeding under the statute regulating acquisition of natural gas storage field rights, and there is no distinction in such proceeding between rights acquired by oil and gas lease and those acquired by mineral deed, since either form of instrument confers on its grantee the only right that one can have to gas and oil in the ground (CL 1948, § 486.252, as amended by PA 1961, No 69).

6. Same—Mineral Royalty Interests.

> Mineral royalty interest may be a separate and distinct interest, but such interest is included in the dominant grant of rights to native gas by oil and gas lease.

7. Same—Statute—Construction.

> Requirement of the statute regulating acquisition of natural gas storage field rights that condemnor shall first have acquired, by means other than condemnation, 75% of the property rights and interests in the underground field, computed in respect to surface area, must be construed to mean 75% of all rights and not 75% of each type of interest which may be carved out of the formation, to effectuate the intention of the legislature (CL 1948, § 486.252, as amended by PA 1961, No 69).

8. Statutes—Condemnation—Construction—Intent.

> The basic principle that statutes must be construed in such manner as to effectuate their purpose, not defeat legislative intent, and not lead to absurd results overrides the principle, if there is one, that a condemnation statute must be construed in favor of one whose property is condemned.

9. Gas—Natural Gas Storage Field—Statutory Prerequisite—Compliance.

> Petitioner public utility, held, to have satisfied the jurisdiction requirement of statute regulating condemnation of underground natural gas storage field that it should have acquired at least 75%, computed in respect to surface area, of property rights and interests in the underground field, by means other than condemnation, when it had acquired, prior to filing its petition

to condemn, 78.828% of gas storage and surface rights in field, and right to gas underlying 88.928% of the field (CL 1948, § 486.252, as amended by PA 1961, No 69).

Appeal from St. Clair; Kane (Edward T.), J. Submitted Division 2 May 11, 1966, at Lansing. (Docket Nos. 903, 904.) Decided October 11, 1966. Leave to appeal granted by Supreme Court December 30, 1966. See 378 Mich 746, 379 Mich 649.

Michigan Consolidated Gas Company, a Michigan corporation, filed its petition in the probate court of St. Clair county to condemn property interests of numerous defendants, including Raymond E. Beier and Alvira Beier. From an order of the probate court finding that it had jurisdiction of the petition, defendants Beier appealed to the St. Clair circuit court, and at the same time began an action as plaintiffs in the circuit court for superintending control of the probate judge. From orders of the circuit court dismissing the appeal from probate court and dismissing the complaint for superintending control, defendants Beier appeal. Affirmed.

*Dutchess, Mika, Miles, Meyers & Snow,* and *Delmer L. Cleland,* for plaintiff Michigan Consolidated Gas Company.

*Bush, Luce, Henderson & Black,* and *Hogan & Kostoff,* for defendants Beier.

McGREGOR, P. J. The Michigan Consolidated Gas Company filed in the probate court for St. Clair county a petition to condemn property interests necessary for the subterranean storage of natural gas in the Belle River Mills gas field, pursuant to PA 1923, No 238, as amended. (CL 1948, § 486.251 *et seq.,* as amended by PA 1957, Nos 67, 254, and PA 1961, No 69 [Stat Ann 1965 Cum Supp § 22.1671 *et seq.*].) The issue is whether Michigan Consolidated, appellee

herein, acquired such rights in at least 75% of the lands in the gas field, computed in respect to surface area before filing suit, as required by section 2 of the act, as amended by PA 1961, No 69. Appellants Beier contend that landowner's mineral royalty interests are "property rights and interests" within the meaning of section 2 of the act, and that the appellant was required to acquire such rights in 75% of the lands. Appellants also contend that rights to gas storage and use of the native gas must be obtained in fee since a lease is insufficient to convey ownership of such rights. Appellants are the owners of the only tract of land presently remaining in condemnation, totalling less than 36 acres out of a storage area of 1,835.86 acres, the appropriate interests in all of the other tracts in the field having been heretofore acquired by appellee. Hearings were held before the probate court and proofs were submitted by appellee relating to jurisdictional matters and its right to the appointment of commissioners. After briefs were filed and arguments of all counsel were heard, the probate court entered an order holding that the court had jurisdiction and appointing three commissioners to determine necessity and damages. Thereupon, appellants filed their appeals from said order to the circuit court for St. Clair county and at the same time appellants filed with the circuit court complaints for superintending control. Under its superintending control, the circuit court permitted further hearings before commissioners on necessity and, on March 12, 1965, said commissioners filed their report with the probate court, finding necessity in favor of appellee. Upon review, the circuit court for the county of St. Clair also found that appellee had met all jurisdictional requirements of PA 1923, No 238, as amended. Orders dismissing said appeals and complaints for superintending con-

trol were entered and appellants have appealed from these orders of dismissal.

Pending hearing on these appeals, the Court of Appeals, by order dated June 25, 1965, permitted continuation of the condemnation proceedings, and the probate court for St. Clair county thereafter confirmed the commissioners' report on necessity and granted appellee immediate occupancy of the Belle River Mills gas field for gas storage purposes, and since July 7, 1965, said field has been operated as an underground gas storage field.

The 75% interest needed to condemn is computed in respect to surface area. Prior to July 13, 1964, appellee had acquired from the landowners the right to use for gas storage purposes the formations or strata underlying 1,447.17 acres of the total 1,835.86 acres contained within the field boundaries, or 78-.828% of the storage rights in the underground field. These documents also grant to appellee the right to use the surface of the same tract of land as acquired for gas storage operations.

The only other property required by appellee in the Belle River Mills field for gas storage purposes was the right to the native gas contained therein. Uncontroverted evidence was received at the jurisdictional hearings which showed that prior to July 13, 1964, appellee had acquired the right to all the gas underlying 1,632.60 acres of the total 1,835.86 surface acres in the storage field, or 88.928%. The right to the native gas in the field was obtained principally by appellee as lessee under oil and gas leases which gave appellee, at the time of filing its petition to condemn, the sole and exclusive right to produce, take, and market all of the gas underlying the lands covered by such leases.

The appellants claim that in addition to the oil and gas leases, the appellee should have obtained mineral deeds covering 75% of the surface area in the field,

but they do not show what greater or additional property rights to the gas in the field are legally necessary than the appellee already had, under their storage and surface rights, as well as under their leases thereto. The gas not yet captured is a part of the land under which it is located, and the record clearly shows that the appellee had acquired the rights to all the gas underlying 1,632.60 acres (or 88-.928%) of the total 1,835.86 surface acres in the storage field. *Jaenicke* v. *Davidson* (1939), 290 Mich 298; *Mark* v. *Bradford* (1946), 315 Mich 50.

The only ownership that one can have in unproduced oil and gas is the right, to the exclusion of all others, to reduce the same to possession and thereby acquire title thereto. This fundamental precept of oil and gas law, commonly known as the "law of capture", is based upon the fugitive nature of oil and gas, and has been uniformly adopted throughout the United States. *Attorney General* v. *Pere Marquette R. Co.* (1933), 263 Mich 431; *Quinn* v. *Pere Marquette R. Co.* (1931) 256 Mich 143; *Rich* v. *Doneghey* (1918), 71 Okla 204 (177 P 86, 3 ALR 352).

The exclusive right to explore for and reduce oil and gas to possession becomes vested in a lessee under an oil and gas lease immediately upon the execution thereof. Gas royalties, present and prospective, are part of the value to be allocated to the landowner in condemnation awards.

"(A) transfer of title or of a right in the unsevered oil and gas, together with the right to go upon the land for the purpose of taking the oil and gas therefrom, involves a granting of rights in real estate; and the instruments granting such rights are appropriately denominated 'leases'." *Jaenicke* v. *Davidson, supra,* 303.

Under said PA 1923, No 238 as amended, the right to the native gas is the material consideration and

the type of instrument used in acquiring that right is immaterial. The statute speaks of property rights and interests and not of the form of instrument used. There is no distinction in this proceeding between an oil and gas lease and a mineral deed, since under the oil and gas leases owned by appellee in the Belle River Mills field, appellee had the sole and exclusive right to produce, take, and market 100% of the gas underlying the lands covered by such leases. This is the only right that one can have as to oil and gas in the ground.

Appellants apparently concede that prior to the date on which appellee filed its petition to condemn, appellee had acquired over 75% of the property rights and interests in the Belle River Mills field required for storage purposes, considered in their entirety. They say, however, that this was not enough and that prior to such filing, appellee should have acquired 75% of *each* type of interest in the field, computed separately.

To effectuate the obvious intent and purpose of the legislature, the statutory language must be construed to relate the 75% requirements to the entirety of the property needed for storage and not to *each* type of interest which may be carved out of the formation, *i.e.,* surface rights, and gas, and oil. The statutory construction urged by appellants would completely frustrate the legislative intent and purpose. Innumerable types of interests can be created in real estate formations, limited only by the imagination of man. If the statute were construed to require appellee to have 75% of each and every such interest, it is apparent that a single recalcitrant landowner could create a "one-of-a-type" interest which he could refuse to sell and thus permanently obstruct any storage field development.

Appellants Beiers' tenuous contention that the mineral royalty interests are "property rights and

interests" under the pertinent act, and that 75% of
*each* of such "property rights and interests" must
be held by the petitioner as a jurisdictional require-
ment falls.  The pertinent statute does not use the
word *each,* but says:

"Petitioner shall first have acquired  *  *  *  at
least 75%, computed in respect to surface area, of
the property rights and interests in the underground
field required for storage purposes."  CL 1948,
§ 486.252, as amended by PA 1961, No 69 (Stat Ann
1965 Cum Supp § 22.1672).

None of the other appellees-grantors of their re-
spective interests to the lands involved considered
the ownership of "mineral royalty interests" as
something apart and different from their respective
grants.  Such "property rights and interests" identi-
fied by the appellants as "mineral royalty interests"
may be a separate and distinct interest, but such in-
terests can be and are included in the respective
superior or dominant grants by the owners thereof
to the Michigan Consolidated Gas Company.  This
complied with the mandatory antecedent require-
ment of 75% with respect to surface areas.

Appellants Beier further insist that a condemna-
tion statute ought to be construed in favor of the one
whose property is being condemned.  While there
are cases favoring this principle, such principle must
give way to the basic proposition that statutes, in-
cluding condemnation statutes, must be construed
in such a manner as to effectuate their purpose, not
defeat the legislative intent, and not lead to absurd
results.  *Ballinger* v. *Smith* (1950), 328 Mich 23;
*Webster* v. *Rotary Electric Steel Co.* (1948), 321
Mich 526; *Parsons* v. *Wayne Circuit Judge* (1877),
37 Mich 287. . . .

The Michigan Consolidated Gas Company comes
before this Court as a public utility having satisfied

the jurisdictional requirements of said Act No 238, as amended. Prior to filing its petition to condemn, appellee had acquired 78.828% of the storage and surface rights in the Belle River Mills field, together with the right to all the gas underlying 88.928% of the Mills field, therefore possessing the necessary interests.

The language employed in the statute is plain —the 75% jurisdictional requirement therein was computed in respect to the surface area and need not be applied to the "property rights and interests of *each* lessor and lessee."

We affirm the findings of the probate and circuit courts, with costs to appellee.

BURNS and QUINN, JJ., concurred.