### GOLDSMITH v MOSKOWITZ

1. Pleading—Complaint—Fraud—Summary Judgment—Court Rules.

     Court rules require a plaintiff in an action for fraud to plead fraud in his initial complaint and to state a claim upon which relief can be granted, and where there is a failure to comply, summary judgments are proper (GCR 1963, 112.2, 117.2[1]).

2. Judgment—Final Judgment—Review and Revision of Judgment—Court Rules.

     A judgment or order is required by court rule to dispose of all of the litigation and parties in a cause of action, and where the judgment or order does not do so, it is subject to review and revision at any time before entry of a judgment which is final and does adjudicate the claims of all of the parties (GCR 1963, 518.2).

3. Pleading—Amendment—Discretion of Court—Court Rules.

     Leave to amend a pleading shall be freely given when justice so requires (GCR 1963, 118.1).

4. Conspiracy—Definition—Illegal Purpose—Damages.

     A conspiracy is a combination of two or more persons who by some concerted action attempt to accomplish an unlawful purpose; there must be a showing of both illegal purpose and damages, although in alleging the conspiracy the exact means used need not be specified.

5. Pleading—Amended Complaint—Denial of Motion—Special Findings—Justice.

     A trial court is required to support its denial of a motion for leave to file an amended complaint by special findings as to reasons for holding that justice would not be served by granting the amendment.

REFERENCES FOR POINTS IN HEADNOTES

[1] 37 Am Jur 2d, Fraud and Deceit §§ 331, 423–425, 432–436.

[2] 46 Am Jur 2d, Judgments § 229 *et seq.*

[3, 5] 61 Am Jur 2d, Pleading §§ 306, 310, 314.

[4] 16 Am Jur 2d, Conspiracy §§ 1, 43.

Appeal from Emmet, Martin B. Breighner, J. Submitted October 5, 1976, at Grand Rapids. (Docket No. 27154.) Decided March 30, 1977.

Complaint by Casper J. Goldsmith and M. Eleanor Goldsmith against Ted Moskowitz, Rosalie R. Moskowitz, Irwin J. Rosenbaum and others for damages for conspiracy to defraud. Summary judgments for all defendants, except Moskowitz and Rosenbaum. Plaintiffs appeal. Reversed and remanded.

*Richard H. Scholl,* for plaintiffs.

*Clark, Stroup, Brown, MacKenzie & Pointner,* for defendant West Oakland Bank.

*Zerafa, Zerafa & Christian, P. C.,* for defendants First Petoskey Associates, Edward M. Rader, Stuart D. Frank, Arnold N. Slutzsky, Jane Bowles, Alphonse Arjay, Robert Cowper, Jack Eccstein and Bursar Realty Corporation.

*Bernard P. Paige, P. C.* (by *Thomas J. Quarles),* for defendant Seymour Levine.

Before: R. B. BURNS, P. J., and D. E. HOLBROOK and T. M. BURNS, JJ.

D. E. HOLBROOK, J. The plaintiffs brought this action for conspiracy to defraud, which plaintiffs claim resulted in the unlawful taking of their property by the defendants. At the oral argument, plaintiffs represented that the West Oakland Bank was named a defendant only because it held a mortgage on the property formerly owned by the plaintiffs, title of which was obtained by some of

defendants as a result of the conspiracy to defraud, as alleged.

The complaint was filed on April 30, 1974, together with notices of lis pendens. The allegations charged therein set forth in part that defendants Ted Moskowitz and Irwin J. Rosenbaum sold land in Arizona to plaintiffs, which they did not own; procured loans from plaintiffs under false pretenses; and through misrepresentations involved plaintiffs in a business venture, Fashion Ring Franchise, using plaintiffs' finances for said defendants' sole gain. In the spring of 1973, defendants Moskowitz and Rosenbaum, acting in concert with the remaining defendants except the bank, successfully embarked on a scheme to relieve the plaintiffs of five valuable parcels of real estate by representing to them that their investments thus far made with defendants could only be safeguarded by a loan which this real estate was to secure and which was to be paid by defendants. Plaintiffs claim that at no time did they intend to convey ownership of these properties and that the entire transaction was misrepresented to them. Plaintiffs further allege that finally one of the defendants, First Petoskey Associates, a limited partnership (of several of the individual defendants) was specifically brought into being for the purpose of taking over plaintiffs' properties (without plaintiffs' knowledge) and did, in fact, take legal title to plaintiffs' real estate, comprising certain warehouse facilities and business properties, including investment properties most of which plaintiffs enjoyed free and clear. As a part of the fraudulent scheme, plaintiffs allege defendants granted plaintiffs a leaseback arrangement. Plaintiffs claim they were totally ignorant of the true nature of this transaction and that they had

been deceived and defrauded. Defendants moved for a summary judgment because plaintiffs had failed to allege fraud with sufficient specificity as required by GCR 1963, 112.2, and failure to state a claim upon which relief could be granted, GCR 1963, 117.2(1). Leave was granted permitting plaintiffs to make the complaint more specific insofar as it regarded the complaint of defendants' conspiracy to defraud them of their properties, and plaintiffs sought to correct this by filing an amended complaint. The amended complaint insofar as pertinent alleged the following:

"That in the Spring of 1973, defendants, Ted Moskowitz, and Irwin J. Rosenbaum, acting on behalf of themselves and as expressly or impliedly authorized by defendants Rosalie R. Moskowitz, and International Brokers Ltd., Inc., Seymour Levine, First Petoskey Associates, Edward M. Rader, Stuart D. Frank, Arnold N. Slutzsky, Jean Bowles, Alphonse Arjay, Robert Cowper, Jack Eccstein, Bursar Realty Corp., and West Oakland Bank, a National Association, in pursuance of a scheme to defraud plaintiffs of their properties and as a part of a plan by all said defendants to carry out said scheme and to induce plaintiffs to convey their real properties to them through First Petoskey Associates, a Partnership, which unknown to plaintiffs had earlier been set up by defendants for the purpose of acquiring their property as part of such conspiracy to defraud, falsely and fraudulently materially represented to plaintiffs with intento *[sic]* to deceive them and deprive them of their properties that the only way plaintiffs could 'save' International Brokers Ltd. Inc., and obtain return of the considerable monies paid to them up to that time was if they would sign various 'legal papers' prepared by and on behalf of all defendants, and presented to plaintiffs for signatures, so that an entity identified to plaintiffs only as First Petoskey Associates could take action to protect plaintiffs' investment and get plaintiffs *[sic]* money back for them."

Defendants renewed their motions for summary judgment, reiterating that the amended complaint failed to state a cause of action in fraud and deceit with sufficient specificity as required by the court rules. In addition, on October 30, 1974, defendant Seymour Levine, one of the alleged co-conspirators, filed an affidavit in the court which in pertinent part reads as follows:

"3. THAT your affiant, if sworn as a witness, can testify competently to the following facts, with reference to the claim of defense, set forth in the within matter:

"(a.) THAT Defendant SEYMOUR LEVINE's only connection with this matter whatsoever, was to introduce lender, Defendant Banking Association, through an intemediary *[sic]* and/or BURSAR REALTY, to borrower, INTERNATIONAL BROKERS, LTD., for a loan for an undisclosed purpose or nature.

"(b.) THAT FURTHER, he only acted as independent parttime bookkeeper for INTERNATIONAL BROKERS LTD., one of the Defendants, and had no relationship to the subject property or transaction involving any property, fraud or collusion in any manner, whatsoever.

"(c.) THAT affiant believes that any transactions between Plaintiffs and the other Defendants were entirely unrelated to this Defendant.

"(d.) THAT notwithstanding the coincidental relationship between this Defendant and the Defendants INTERNATIONAL BROKERS, LTD., and BURSAR REALTY, and through an intermediary: Associates Investment & Management, Inc the banking institution, as intermediary, that this Defendant had nothing to do with the real estate transaction, loan itself, inducement or any alleged collusion or fraud involving Plaintiffs, or any alleged representation or misrepresentation."

Defendant Edward M. Rader filed an affidavit in court concerning the transaction herein. He stated in pertinent part:

"3. That at said closing and in the presence of AR-
NOLD SLUTZKY *[sic]*, STEWART *[sic]* FRANK,
JAMES W. O'NEIL of BURTON ABSTRACT & TITLE
COMPANY, THEODORE MOSKOWITZ, IRWIN RO-
SENBAUM, and SEYMOUR LEVINE, prior to the
execution of any documents, he explained the entire
transaction to MR. & MRS. CASPER GOLDSMITH and
repeated the explanation and answered questions until
he was satisfied that MR. & MRS. GOLDSMITH had a
full understanding of the transaction and of the provi-
sions of all of the documents involved in said transac-
tion.

"4. That no other statements, promises, or agree-
ments were made, except the provisions and agree-
ments contained in the documents constituting this
transaction. Further, that there was no collusion with
anyone respecting this transaction."

A similar affidavit was filed by one James W.
O'Neil at the same time that the affidavit of
defendant Rader was filed. Both Rader's and
O'Neil's affidavits were not filed until the day of
the hearing. The affidavit of plaintiff Casper Gold-
smith was taken August 19, 1974. The affidavits of
Rader, O'Neil and Goldsmith all attested to the
fact that defendant Levine was present at the real
estate closing on April 26, 1973.

The trial court found that plaintiffs' amended
complaint still did not meet the requirements of
GCR 1963, 112.2 and GCR 1963, 117.2(1) in that it
did not state the circumstances constituting fraud
with sufficient particularity and granted the mo-
tion for summary judgment to the defendants,
except as to Moskowitz and Rosenbaum. An order
was entered against the plaintiffs and in favor of
defendant Levine on November 8, 1974, dismissing
the cause with prejudice and assessing costs, in-
cluding actual attorney fees in the amount of
$1,455. A second summary judgment was entered

November 12, 1974, dismissing plaintiffs' action against First Petoskey Associates and the general and limited partners thereof on the grounds that there were no genuine issues as to any material facts, and failure to plead fraud with particularity. A third summary judgment was entered in favor of West Oakland Bank, dismissing plaintiffs' cause with prejudice and assessing costs of $150.

Plaintiffs filed a motion for rehearing of the motions for summary judgments and costs on November 27, 1974. On December 24, 1974, to accommodate counsel for defendant Levine, the motion for rehearing previously scheduled for January 10, 1975, was rescheduled for March 14, 1975, and an order entered thereon. On January 15, 1975, Richard H. Scholl substituted as counsel for plaintiffs. On March 10, 1975, plaintiffs added to their motion for a rehearing, a motion to vacate summary judgments previously entered and for leave to file an amended complaint and for an order allowing this proposed amended complaint to stand as plaintiffs' second amended complaint or in the alternative for a rehearing relative to the provisions in the summary judgments that dismissals were "with prejudice" and a rehearing relative to the award of attorney fees. The pertinent part of plaintiffs' second amended complaint reads as follows:

"15. That, on information and belief, International Brokers Ltd., Inc., hereinafter referred to as INTERNATIONAL was used by Ted Moskowitz, hereinafter referred to MOSKOWITZ and Irwin J. Rosenbaum, hereinafter referred to ROSENBAUM, as vehicle through which they financed their existence by obtaining money through false pretenses as hereintofore set forth, and not for any ligitimate *[sic]* business purpose.

"16. That MOSKOWITZ and ROSENBAUM, in the spring of 1973, spurred by their previous success in

defrauding Plaintiffs, conspired to obtain additional sums of money from Plaintiffs through the following scheme:

"(a) By convincing the semi-literate Casper Goldsmith that in order to protect his investment in INTERNATIONAL he would have to secure a certain loan necessary to be made by mortgaging some of his real estate.

"(b) That to re-finance the said loan, it would be necessary that Plaintiffs assign a certain document 'papers' for obligations to be the sole responsibility of INTERNATIONAL and without any attendant risk to Plaintiffs.

"(c) That in truth, the 'papers' to be signed were deeds and other instruments of transfer of Plaintiffs' interest in certain properties, particularized in paragraph 16(a) through (e) of Plaintiffs' original Complaint dated 4-30-74, transferring said described properties to a middle man and that the true nature of this transaction be entirely withheld from Plaintiffs.

"(d) That the middle man was to receive sufficient incentive to make this venture financially rewarding which was to be accomplished by a lucrative leaseback arrangement of the above described properties to the financially able Plaintiffs and by certain repurchase options which, even if Plaintiffs ever were to learn of them, could not economically be exercised, thus virtually assuring the middle man of absolute ownership of the described properties.

"(e) The middle man was to make arrangements in return for these considerations for a loan of funds from a financial institution by mortgaging properties described and referred to above and by assigning the lease-back.

"(f) Plaintiffs were to be kept ignorant of the transaction at its consummation, at which time they were to be requested to sign all necessary 'papers', with assurances from MOSKOWITZ and ROSENBAUM that doing so would be in their best interest and would assure the security of their investment in INTERNATIONAL.

"17. That, on information and belief, Seymour Levine, hereinafter referred to as LEVINE, was an agent, employee and confidant of MOSKOWITZ and ROSENB-

AUM and fully aware of their activities, individually and as agents of INTERNATIONAL, in general, and as heretofore set forth in this Complaint, particularly as they pertained to and involved proposed plans for Plaintiffs, including the scheme referred to immediately above.

"18. That on information and belief, LEVINE arranged for a certain loan by INTERNATIONAL financed by Oakland National Bank, to be secured by mortgage from Plaintiffs, of real estate owned by them, at risk of forfeiture and based on false representations by ROSENBAUM and MOSKOWITZ, that Plaintiffs were thereby protecting their investment, all of which was known to LEVINE.

"19. That, on information and belief, LEVINE, in cooperation with MOSKOWITZ and ROSENBAUM in their scheme set forth in paragraph 16 of this Second Amended Complaint either alone, or together with MOSKOWITZ and/or ROSENBAUM approached Edward M. Rader, hereinafter referred to as RADER, President of Busar *[sic]* Realty, in an attempt to implement the said scheme and, on information and belief, apprised RADER of the same, or, in the alternative, of the essential elements of the plan and advised him that some easy money could quickly be made, on information and belief, apprising RADER of Plaintiffs' ignorance and innocence and gullibility and of the profitability of prior transactions of MOSKOWITZ, ROSENBAUM and INTERNATIONAL in their past dealings with Plaintiffs, as heretofore set forth, and further that LEVINE thereafter collaborated with RADER in implementing and perfecting the said scheme by being involved in preparation of 'papers', and documents to formalize and effectuate the same.

"19. *[sic]* That RADER, who, on information and belief, was well aware of Plaintiffs' unawareness of the ploy incident and aware of the prior unsavory activities of MOSKOWITZ and ROSENBAUM generally, and insofar as they pertain to Plaintiffs, as heretofore set forth in this Complaint and further aware of LEVINE's cooperation with MOSKOWITZ and ROSENBAUM, set out to and did form a limited partnership known as First Petoskey Associates, hereinafter referred to as

FIRST PETOSKEY, to act as middle man in the scheme set forth in paragraph 16 hereof.

"20. *[sic]* That on information and belief, Arnold N. Slutzsky, hereinafter referred to SLUTZSKY, and Stuart D. Frank, hereinafter referred to as FRANK, joined RADER as general partners in FIRST PETOSKEY, after having been made fully aware of the fact that RADER knew of the proposed transaction, the relationship of the parties thereto and their prior dealings with one another.

"21. *[sic]* That the general partners of FIRST PETOSKEY, at all pertinent times, knew that Plaintiffs were ignorant of the true nature of the proposed transaction, or, knew, or had reason to know that the proposed transaction was against Plaintiffs' interest, that those prompting Plaintiffs to become involved therein, were likely to strike an unfair bargain with and take advantage of Plaintiffs and that Plaintiffs had no reasonable means to discover this fact and they would be deceived by MOSKOWITZ and ROSENBAUM into believing that the proposed transaction was to their benefit, and, in any event of no risk to them.

"22. *[sic]* That, on information and belief, the general partners of FIRST PETOSKEY knew or had reason to believe that MOSKOWITZ and ROSENBAUM were about to take advantage of Plaintiffs in the proposed transactions set forth in paragraph 16 of this Amended Complaint, from which FIRST PETOSKEY was to profit, and that Plaintiffs would not be made aware of the true facts thereof.

"23. *[sic]* That FIRST PETOSKEY collaborated with MOSKOWITZ and ROSENBAUM in becoming the middle man between Plaintiffs and a lending institution as planned by MOSKOWITZ and ROSENBAUM.

"24. *[sic]* That, ignorant of the true nature of the transaction, Plaintiffs, on advice of MOSKOWITZ and ROSENBAUM, that the said transaction was a mere formality to protect their security in INTERNATIONAL and that it did not involve any obligation on Plaintiffs' part and present no risk to them, deeded real estate and made assignments of other equities in real estate to FIRST PETOSKEY involving properties enu-

merated in paragraph 16 of Plaintiffs' original Complaint dated 4-30-74.

"25. *[sic]* That representations made by MOSKOWITZ and ROSENBAUM to Plaintiffs were false.

"26. *[sic]* That FIRST PETOSKEY, through its general partners, knew or had reason to know, of the falsity of the said representations by MOSKOWITZ and ROSENBAUM as set forth above.

"27. *[sic]* That LEVINE knew when he became an intermediary relative to several proposed loans to be secured by Plaintiffs and to the subsequent scheme described in paragraph 16 of this Complaint, that representations made by MOSKOWITZ and ROSENBAUM to Plaintiffs were false.

"28. *[sic]* That after acquiring title for equitable ownership of properties set forth in paragraph 16 of Plaintiffs' original Complaint, FIRST PETOSKEY mortgaged and assigned these interests to West Oakland Bank.

"29. *[sic]* That Busar *[sic]* Realty Corporation, on information and belief, received a commission from the transaction alluded to in paragraph 16 of this Amended Complaint and coordinated the same, without the knowledge or consent of Plaintiffs."

The trial court heard these motions on March 14, 1975, and denied said motions. The trial court stated in part:

"But looking at this case on the basis of the merits that were disclosed by affidavits and by the deposition of Mr. Goldsmith himself, it seemed to this Court that there was absolutely no claim established.

\* \* \*

"At the same time a proposed amended second complaint has been filed and the Court has been requested to authorize the filing of this second amended complaint. The Court reads the second amended complaint and the Court still has the same reaction, that even if the second amended complaint were filed, there is considerable doubt in my mind as to whether the

proper claim has been stated against the defendants with which we are concerned here.

* * *

"So the Court will at this time deny all motions of the plaintiffs in this cause and will return this case to its posture in which it was found when the Court entered summary and/or accelerated relief in November of 1974."

Plaintiffs filed their first claim of appeal with this Court on April 1, 1975. This appeal was denied and returned to plaintiffs on July 25, 1975, on the grounds that the orders previously entered were not final orders and that therefore the Court did not have jurisdiction.

On August 11, 1975, plaintiffs moved for a re-hearing of the earlier motions to amend their complaint, or in the alternative for entry of final judgment pursuant to GCR 1963, 518.2. This motion was heard on September 8, 1975. The court at that time did not address itself to plaintiffs' renewed motion for leave to amend their complaint, but ordered that the prior judgments be amended so as to constitute judgments capable of appeal. Thereafter, on October 23, 1975, plaintiffs filed a motion for clarification requesting a ruling on plaintiffs' motion for leave to file amended complaint on which the court had not ruled on September 8, 1975. The matter was heard October 30, 1975. The court suggested that a transcript be obtained of the September 8, 1975 hearing, so that the court could refresh its recollection. The transcript was furnished. The transcript indicates the court did not address itself to nor rule on plaintiffs' motion before the court at that time for leave to amend plaintiffs' complaint. After reading the transcript, the trial court signed an order denying plaintiffs' motion for leave to amend their com-

plaint and amending the summary judgments heretofore entered making them final judgments pursuant to GCR 1963, 518. These were filed December 22, 1975. On January 10, 1976, plaintiffs filed this, their second claim of appeal in this Court.

In the first instance, we rule that the complaint was not in accord with GCR 1963, 112.2 and GCR 1963, 117.2(1), and therefore the trial court was correct in granting the summary judgments because of plaintiffs' failure to comply with GCR 1963, 112.2 which necessarily resulted in a failure to satisfy GCR 1963, 117.2(1) (failure to state a claim upon which relief could be granted). Because the plaintiffs failed to plead fraud in the initial complaint as required by the court rule, any issue as to whether fact questions were involved in the case at that time could hardly be determined. However, we do recognize that in matters such as this a motion for summary judgment should rarely be granted.

"In cases involving state of mind, such as the scienter requirement in fraud, summary judgment will be appropriate in relatively few instances because it will be difficult to foreclose a genuine dispute over this factual question. Due regard must be allowed for the fact that cross-examination may be about the only way one party can prove such an issue." 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Author's Comments, pp 360–361.

See, also, *Reich v State Highway Commission,* 43 Mich App 284, 289; 204 NW2d 226 (1972).

The principal issue before this Court is whether the trial court erred in refusing to grant plaintiffs' motion to set aside the summary judgments in

favor of the defendants and permit plaintiffs to file their second amended complaint.

The trial court considered the motion of plaintiffs as one asking for a new trial. However, the summary or accelerated judgments which had been entered by the trial court did not dispose of all of the litigation. GCR 1963, 518.2 provides that where a judgment or order does not dispose of all the parties to a cause of action such judgment or order is subject to review and revision at any time before entry of final judgment adjudging the claims of all the parties. See *Covello v Brammer,* 47 Mich App 395; 209 NW2d 615 (1973), *Van Buren v B & J Moving & Storage, Inc,* 54 Mich App 266; 220 NW2d 746 (1974). At the time of the summary judgments, plaintiffs' claims against Moskowitz and Rosenbaum were not adjudicated and, therefore, said summary judgments were subject to review and revision at the time plaintiffs sought leave to file their second amended complaint.

In the case of *Foman v Davis,* 371 US 178, 181–182; 83 S Ct 227, 230; 9 L Ed 2d 222, 225–226 (1962), in accord with Federal Rules of Civil Procedure 15(a), it was determined:

"It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.' *Conley v Gibson,* 355 US 41, 48 [78 S Ct 99, 103; 2 L Ed 2d 80, 86 (1957)]. The Rules themselves provide that they are to be construed 'to secure the just, speedy, and inexpensive determination of every action.' Rule 1."

In that case it was ruled that even though the summary judgment was properly granted, leave to amend should have been granted.

In *Matson v Soronen,* 57 Mich App 190, 193–194; 226 NW2d 52 (1974), this Court stated:

"The dispositive issue that confronts this Court is whether plaintiff should have been allowed to amend the complaint so as to add decedent's parents as parties-plaintiff.

"GCR 1963, 118.1 provides that leave to amend a pleading 'shall be freely given when justice so requires'. GCR 1963, 207 states that '[p]arties may be added or dropped by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just'. Although no case so holding has been found, this Court holds that both rules should be similarly construed.

"The granting or denial of a motion to amend a pleading, and presumably, to add parties as well, is discretionary with the trial court. *Grove v Story Oldsmobile, Inc,* 31 Mich App 613; 187 NW2d 923 (1971). However, that discretion is not unbridled. In *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 658; 213 NW2d 134 (1973), it was stated:

" 'The discretion confided to trial judges under the standard "leave shall be freely given when justice so requires", is not boundless. In *Burg v B & B Enterprises,* 2 Mich App 496, 500; 140 NW2d 788 (1966), Judge (now Justice) T. G. KAVANAGH wrote, "[W]e believe that [this] language * * * imposes a limitation on the discretion of the court necessitating a finding that justice would not be served by the amendment." '

"The holding that justice would not be served must be supported by specific findings as to the reasons for the same. *Fyke, supra,* 656–657. No such findings were made by the trial court in the present case."

Also, see, *Tri-Part Manufacturing Co v Michigan Consolidated Gas Co,* 1 Mich App 684; 137 NW2d

739 (1965), and *Burg v B & B Enterprises, Inc,* 2 Mich App 496; 140 NW2d 788 (1966).

Plaintiffs claim a conspiracy to defraud on the part of the defendants. A conspiracy is a combination of two or more persons who by some concerted action attempt to accomplish an unlawful purpose. To establish a conspiracy to defraud, one must show both an illegal purpose and damages, *Stanfill v Hoffa,* 368 Mich 671; 118 NW2d 991 (1962), *Chilton's, Inc v Wilmington Apartment Co,* 365 Mich 242; 112 NW2d 434 (1961). In alleging conspiracy, one need not specify the exact means used in carrying out the illegal purpose. 5 Michigan Law & Practice, Pleading, § 4, pp 593–594. The second proposed amended complaint together with the allegations of the previous complaint properly alleged a conspiracy to defraud by defendants. The illegal purpose on behalf of all defendants, except the bank, was claimed to be to obtain title to plaintiffs' valuable property by misrepresentation and deceit, according to a scheme alleged, the allegation of damages is self-evident in the pleadings—whereas once plaintiffs owned valuable property, as a result of the claimed fraudulent actions of defendants, they have lost their properties to their damage.[1] In denying plaintiffs' motion for leave to file their second amended complaint, the trial court was required under *Matson* to support said denial by specific findings as to reasons for holding that justice would not be served by granting the amendment. No such findings were made by the trial court in the instant case. We rule that the trial court should have granted plaintiffs' leave

---

[1] The plaintiffs received in return for their properties a leaseback from defendants requiring plaintiffs to pay rentals on their own property over a 20-year period of $389,250. In addition they were required to pay the repairs and upkeep of the properties, taxes and insurance. The lease was designated as a triple net lease to the defendants.

to file their second amended complaint and set aside the summary judgments in favor of the defendants heretofore entered. We so order. We further rule that the second amended complaint satisfies the pertinent court rules.

Reversed and remanded for a trial on the merits. Costs to be awarded the prevailing party below.