BOYER v TUCKER & BAUMGARDNER CORPORATION

Docket No. 75128. Submitted October 4, 1984, at Grand Rapids.— Decided June 3, 1985.

Plaintiffs, Kenneth O. Boyer, Lucille Boyer and Dan E. Boyer, are landowners who entered into lease agreements with defendants, Tucker & Baumgardner Corporation, J. Michael Quirk and Robert Schumacher, for the oil and gas rights of plaintiffs' land. The consideration which was given for the execution of the leases were 30-day sight drafts. The drafts were due on December 7, 1980, and were not paid. Around January 7, 1981, defendants issued money orders to plaintiffs to pay for the sight drafts and shortly thereafter recorded the leases. Plaintiffs, who sent a notice to defendants on December 19, 1980, informing them that the drafts had been dishonored and that they considered the leases cancelled, refused to accept the money orders. On February 27, 1981, plaintiffs executed similar leases with a third party. Plaintiffs then brought an action in the Osceola Circuit Court seeking to clear their title to the land. The trial court, Lawrence C. Root, J., issued an order denying plaintiffs' motion to amend their complaint and granting defendants' motion for summary judgment. Plaintiffs appeal. *Held:*

1. The trial court erred in granting the lessees the right to cure based on its interpretation of the leases as a whole. The right to cure is only to protect the lessees from having to suffer inequitable losses after the lessees have made an investment in the land under the rights conveyed in the leases. The trial court erred when it construed the leases in favor of the lessees. Plaintiffs' interpretation that payment of the sight drafts was a condition precedent is fair. The sight drafts were not sufficient

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 38 Am Jur 2d, Gas and Oil § 54 *et seq.*
Right and measure of recovery for breach of obligation to drill exploratory oil or gas wells. 4 ALR3d 284.

[4] 73 Am Jur 2d, Summary Judgment § 37 *et seq.*
Right to voluntary dismissal of civil action as affected by opponent's motion for summary judgment, judgment on the pleadings, or directed verdict. 36 ALR3d 1113.

[5-7] 17 Am Jur 2d, Contracts § 85 *et seq.*

[8] 37 Am Jur 2d, Fraud and Deceit § 12 *et seq.*

consideration in the instant case. Plaintiffs did not bargain for a promise to pay later, rather, they bargained for immediate payment, which was not received.

2. The leases are null and void. The order for summary judgment is reversed.

3. Summary judgment was also improper since there was a genuine issue of material fact regarding plaintiffs' claim of misrepresentation. The case is remanded for determination as to the misrepresentation claim and damages.

Reversed and remanded.

MacKenzie, J., dissented. She would hold that the trial court properly concluded that the sight drafts constituted valid consideration for the leases since plaintiffs had the option of suing either on the drafts themselves or on the underlying obligations. She would hold that the plaintiffs are bound by the terms of the leases. She would reject plaintiffs' argument that the leases were void *ab initio* for lack of consideration and hold that plaintiffs were not entitled to rescission or cancellation of the leases on this theory. She would also find that plaintiffs failed to properly plead misrepresentation and that they are not entitled to a remand to develop this issue further. She would affirm the order granting summary judgment to defendants.

### Opinion of the Court

1. Gas and Oil — Leases — Judicial Construction.

Leases for the oil and gas rights to land are considered to be speculative in nature; the terms of the leases are to be strictly construed in favor of the lessor where there is any ambiguity in the leases.

2. Gas and Oil — Leases — Judicial Construction.

A lease for the oil and gas rights to land should be read not only according to its words, but in connection with the purpose of its clauses; such a lease is considered to be a technical contract reflecting the development and present status of the law of oil and gas.

3. Gas and Oil — Leases — Breach.

The right to cure a breach by a lessee of a lease for the oil and gas rights to land is only to protect the lessee from having to suffer inequitable losses after the lessee has made an investment in the land under the rights conveyed in the lease.

4. JUDGMENTS — SUMMARY JUDGMENT — APPEAL.

Summary judgment is improperly granted to a defendant where a genuine issue of material fact exists and where there could be factual development to justify the plaintiff's right to recovery.

5. GAS AND OIL — LEASES — CONSIDERATION — SIGHT DRAFTS.

Sight drafts, which are considered to be negotiable instruments, are to be treated no differently than any other form of consideration in determining whether sufficient consideration has been given for a lease for the oil and gas rights to land (MCL 400.3104; MSA 19.3104).

### DISSENT BY MACKENZIE, J.

6. OIL AND GAS — LEASES — CONSIDERATION — SIGHT DRAFTS — UNIFORM COMMERCIAL CODE.

*Sight drafts may constitute valid consideration for a lease for the oil and gas rights to land; the lessor has the option under the Uniform Commercial Code to maintain an action either on the drafts themselves or on the underlying obligations where the drafts have been dishonored after presentment (MCL 440.3802[1][b]; MSA 19.3802[1][b]).*

7. CONTRACTS — CONSIDERATION.

*Valid consideration for a contract requires a bargained-for exchange, i.e., there must be a legal detriment that has been bargained for and exchanged for a promise.*

8. FRAUD — ELEMENTS OF ACTION.

*The general rule is that to constitute actionable fraud it must appear that: (1) the defendant made a material representation; (2) it was false; (3) when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth as a positive assertion; (4) he made it with the intention that it should be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon it; and (6) he thereby suffered injury; each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.*

*Varnum, Riddering, Schmidt & Howlett* (by *Jack D. Sage* and *Susan M. Wyngaarden*), for plaintiffs.

*Mika, Meyers, Beckett & Jones* (by *Veryl N. Meyers*), for defendants.

Before: D. E. Holbrook, Jr., P.J., and Mac-
Kenzie and R. R. Lamb,* JJ.

D. E. Holbrook, Jr., P.J. Plaintiffs appeal as of
right from an order that granted defendants' mo-
tion for summary judgment and denied their mo-
tion to amend their complaint.

Plaintiffs are landowners who entered into lease
agreements with defendants for the oil and gas
rights of their land. The consideration for execu-
tion of these leases were 30-day sight drafts; one
draft was given for each land parcel. These drafts
were due on December 7, 1980, and were not paid.
Around January 7, 1981, defendants issued money
orders to plaintiffs to pay the sight drafts and
shortly thereafter recorded the leases. Plaintiffs,
who had sent a notice to defendants on December
19, 1980, informing them that the drafts had been
dishonored and that they considered the leases
cancelled, refused to accept the tendered money
orders. Plaintiffs, on February 27, 1981, executed
similar leases with a third party. Plaintiffs then
filed a circuit court action to have the recorded
leases removed as they alleged that they consti-
tuted a cloud on their title. On appeal, plaintiffs
contend that the trial court erred in granting
defendants' motion for summary judgment, that
the leases were void *ab initio* upon dishonor of the
sight drafts and that plaintiffs are entitled to
rescission under these facts.

In the instant case we are dealing with oil and
gas leases which are considered to be speculative
in nature. Where there is any ambiguity in the
leases, the terms of the leases are to be strictly
construed in favor of the lessor. *McClanahan Oil
Co v Perkins,* 303 Mich 448; 6 NW2d 742 (1942).
The trial court granted the lessees the right to

* Circuit judge, sitting on the Court of Appeals by assignment.

cure based on its interpretation of the leases as a whole. We find this to be in error. An oil and gas lease should be read not only according to its words, but in connection with the purpose of its clauses. *Howard v Hughes,* 294 Mich 533, 538; 293 NW 740 (1940), and *Michigan Wisconsin Pipeline Co v Michigan National Bank,* 118 Mich App 74, 81; 324 NW2d 541 (1982). The lessors contend that the right to cure is only to protect the lessees from having to suffer inequitable losses after the lessees have made an investment in the land under the rights conveyed in the leases. The lessees claim that they have the right to cure at any time. We agree with the lessors and find that the trial court erred when it construed the leases in favor of the lessees.

As the signing of the leases gave defendants the exclusive and immediate right to explore for and remove the oil and gas, *Michigan Consolidated Gas Co v Muzeck,* 4 Mich App 502, 507; 145 NW2d 266 (1966), it is reasonable to believe that plaintiffs relied on the sight drafts[1] to represent cash in hand. The leases are considered to be technical contracts reflecting the development and present status of the law of oil and gas. *Michigan Wisconsin Pipeline Co, supra,* p 81. Plaintiffs' interpretation that payment of the sight drafts was a condition precedent is fair. Since this area is so highly speculative, plaintiffs deserve more consideration and protection than merely the right to sue on an obligation.

Were we to allow lessees' version of the leases to control, defendants would be able to speculate

[1] Sight drafts, which are considered negotiable instruments, MCL 440.3104; MSA 19.3104, are to be treated no differently than any other form of consideration. Without sufficient funds in the bank, all plaintiffs received was a right to sue. 11 Am Jur 2d, Bills and Notes, § 237, p 264. While this may be sufficient in some instances, we do not find this to be sufficient consideration in the instant case.

with the assets of another without the payment of any consideration. Plaintiffs did not bargain for a promise to pay later, rather, they bargained for immediate payment, which was not received. Therefore, we reverse the order for summary judgment and hold the leases to be null and void.

Summary judgment is also improper here, as there was a genuine issue of material fact. Plaintiffs contend that defendants perpetrated a misrepresentation upon them and that, due to that misrepresentation, rescission should be granted, or in the alternative, damages should be awarded. It is possible that defendants were aware that their drafts were going to be dishonored and that all the elements of misrepresentation were present. *United States Fidelity & Guaranty Co v Black*, 412 Mich 99; 313 NW2d 77 (1981).

Accordingly, this is not a situation where there could be no factual development to justify plaintiffs' right to recovery. Plaintiffs should have an opportunity to develop their claims. *Cramer v Metropolitan Savings Ass'n (Amended Opinion)*, 136 Mich App 387; 357 NW2d 51 (1984), and *Ferrell v Vic Tanny International, Inc*, 137 Mich App 238; 357 NW2d 669 (1984). We are reluctant to grant summary judgment in a case such as this which involves a state of mind. *Goldsmith v Moskowitz*, 74 Mich App 506, 518; 254 NW2d 561 (1977).

Our judgment is for plaintiffs and we remand for determinations as to the misrepresentation claim and damages.

Reversed and remanded with instructions. Costs to appellants.

R. R. Lamb, J., concurred.

MacKenzie, J. *(dissenting)*. I respectfully dis-

sent. I cannot agree that the leases are void or that plaintiffs should be afforded an additional opportunity to develop their claim of misrepresentation on remand.

Plaintiffs' first argument is that the leases were void *ab initio* for lack of consideration. Plaintiffs contend that they never received the "$TEN AND MORE" recited in paragraph 1 of the leases as consideration for their allowing defendants the right to drill for oil and gas. Plaintiffs maintain that this was a condition precedent to their executing the leases. Additionally, plaintiffs argue that the trial court erred in construing paragraph 7 of the leases as granting defendants the right to cure any default.

Paragraphs 1 and 7 of the leases provided in pertinent part:

"1. Lessor, for and in consideration of $TEN AND MORE, the receipt of which is hereby acknowledged, and the covenants and agreements of the Lessee hereinafter contained, does hereby grant, lease and let unto Lessee, exclusively, for the purposes of exploring by geophysical and other methods, drilling, mining, operating for and producing oil and/or gas, * * * all that certain tract of land situated in the County of Osceola, State of Michigan, described as follows, * * *.

* * *

"7. In the event Lessor shall claim a default in the performance of any express or implied covenant of this lease, Lessor shall give notice in writing by certified United States mail, addressed to Lessee at his principal office, specifying the facts relied upon as constituting a breach hereof. Lessee shall have 60 days from receipt of such notice to commence and thereafter pursue with reasonable diligence such action as may be necessary or proper to satisfy such obligation of Lessee, if any, with respect to Lessor's notice. No judicial action may be commenced by Lessor for forfeiture of this lease or for damages until after said 60 day period. Lessee shall be

given a reasonable opportunity after judicial ascertainment to prevent forfeiture by discharging its express or implied obligation as established by the court."

The trial court held that the defendants' promises to pay, as evidenced by the sight drafts, satisfied the consideration requirement of paragraph 1. Further, the court found that the consideration obligation created by paragraph 1 was an express covenant and that paragraph 7 granted defendants the right to cure any default of such a provision. The trial court held that defendants' tender of payment of the sight drafts on January 7, 1981, was a proper attempt to cure the default.

I do not agree with plaintiffs' arguments or with the trial court's interpretation of paragraph 7. Paragraph 7 does not apply because defendants' obligation to pay plaintiffs consideration of "$TEN AND MORE" in exchange for their execution of the leases was not an "express or implied covenant of this lease" within the meaning of paragraph 7. The 30-day sight drafts given by defendants were not part of the leases, since the parties did not expressly refer to the sight drafts in the leases.

I do agree with the trial court's conclusion that the sight drafts constituted valid consideration for the leases. MCL 440.3802(1)(b); MSA 19.3802(1)(b) provides in pertinent part:

"(1) Unless otherwise agreed where an instrument is taken for an underlying obligation

* * *

"(b) * * * the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation * * *."

The sight drafts here were dishonored by defen-

dants' bank 30 days after presentment. At that time, pursuant to MCL 440.3802(1)(b), plaintiffs had the option of suing either on the drafts themselves or on the underlying obligations.

In contrast, had defendants agreed to pay plaintiffs in cash, instead of with 30-day sight drafts, and had defendants thereafter failed to make the agreed-upon payments, plaintiffs could have maintained an action only on the underlying obligation. The issue, then, becomes whether plaintiffs' right under the UCC to maintain an action on either the drafts or on the underlying obligations, at their option, constituted valid consideration for the oil and gas leases. I would hold that it did and that, therefore, plaintiffs are bound by the terms of their leases with defendants.

Valid consideration for a contract requires a bargained-for exchange, *i.e.,* there must be a legal detriment that has been bargained for and exchanged for a promise. *Higgins v Monroe Evening News,* 404 Mich 1, 20; 272 NW2d 537 (1978). As part of the bargain, plaintiffs here agreed to accept sight drafts from defendants instead of cash. By accepting drafts in exchange for the use of their property, plaintiffs received the right to sue on the instruments themselves, a right they would not have otherwise had. Defendants, in return, by issuing the sight drafts, made themselves vulnerable to an action by plaintiffs on the drafts in the event they were later dishonored, a legal detriment beyond the liability they might have otherwise incurred on the underlying leases.

Consequently, I would reject plaintiffs' argument that the leases were void *ab initio* for lack of consideration. Plaintiffs were not entitled to rescission or cancellation of the leases on this theory.

Plaintiffs also argue that the trial court erred in failing to grant rescission based on their claim of

misrepresentation. In the alternative, plaintiffs maintain that material issues of fact precluded a grant of summary judgment on this claim.

I would find that plaintiffs failed to properly plead misrepresentation and that they are not entitled to a remand to develop this issue further. The Supreme Court set forth the elements of misrepresentation or fraud as follows in *Hi-Way Motor Co v International Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976):

> " 'The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.' " Quoting *Candler v Heigho,* 208 Mich 115, 121; 175 NW 141 (1919).

In the case at bar, plaintiffs did not claim misrepresentation in their original complaint filed March 4, 1981. In their first amended complaint, filed July 2, 1981, plaintiffs set forth a count labeled "Fraud". In this count plaintiffs alleged that (1) defendant Schumacher represented to them that the sight drafts would be paid within 30 days, (2) plaintiffs relied on this representation in leasing the premises, and would not have entered into the leases had the representation not been made, and (3) contrary to the representation, defendants did not pay the drafts within 30 days.

Plaintiffs' first amended complaint failed to allege that defendants made the representation

knowing that it was false, or made it recklessly
without any knowledge of its truth. In addition,
plaintiffs did not allege that defendants made the
representation with the intention that plaintiff act
on it. Consequently, the allegations in the first
amended complaint were insufficient to properly
plead fraud or misrepresentation.

On appeal plaintiffs argue that their complaint
was sufficient for a claim of *innocent* misrepresen-
tation. *United States Fidelity & Guaranty Co v
Black,* 412 Mich 99; 313 NW2d 77 (1981). However,
in the circuit court plaintiffs did not put forth such
a theory. Their claim was one of fraud, *i.e.,* tradi-
tional misrepresentation. Since plaintiffs failed to
seek relief on a claim of innocent misrepresenta-
tion in the trial court, this theory is not properly
before this Court on appeal. See *Reed v St Clair
Rubber Co,* 118 Mich App 1, 10; 324 NW2d 512
(1982).

The trial court gave plaintiffs more than one
opportunity to properly plead and argue their
case. In denying plaintiffs' motion for summary
judgment on November 4, 1982, the court granted
plaintiffs ten days to present arguments why the
court should not grant summary judgment for
defendants. In response, plaintiffs filed a motion
for rehearing which essentially raised the same
points made earlier.

Two months later, on January 28, 1983, plain-
tiffs filed a motion to amend their complaint.
Plaintiffs proposed amended complaint alleged
fraud and misrepresentation (as before), lack of
consideration, and unconscionability. The uncon-
scionability claim did not identify any specific
portion or clause of the leases as unconscionable
and did not state any legal reason why plaintiffs
believed the leases to be unconscionable.

The trial court denied the motion to amend,

finding that the claim of fraud was insufficiently pled and that on this and the breach of contract claim plaintiffs had alleged nothing to avoid the court's earlier ruling. The court also determined that plaintiffs' allegations of unconscionability were so general as to be legally insufficient.

In denying plaintiffs' motion to amend, the trial court granted plaintiffs another ten days to draft a sufficiently specific claim that the leases were unconscionable. Plaintiffs did not file any further amendments in response to this ruling.

In this situation I can see no reason to afford plaintiffs yet another opportunity to develop their claim for misrepresentation (or unconscionability) on remand. I would affirm the trial court's order granting summary judgment to defendants.