ROSENBERG v ROSENBERG BROTHERS SPECIAL ACCOUNT

Docket Nos. 70976, 72067. Submitted April 4, 1984, at Detroit.—
Decided May 1, 1984.

Charlotte Rosenberg, the widow of Jack Rosenberg, brought an
action in the Oakland Circuit Court on behalf of herself and as
executrix of the estate of Jack Rosenberg, deceased, against
Rosenberg Brothers Special Account, Edward Rosenberg, Mt.
Pleasant Shopping Center, a Michigan partnership of which
Jack Rosenberg was a partner, and others. Plaintiff's complaint
alleged breach of contracts, breach of fiduciary duties, causes of
action for dissolution, and intentional infliction of emotional
distress. Specifically, count 21 alleged that Edward Rosenberg
intentionally and maliciously engaged in a course of extreme
and outrageous conduct to inflict severe emotional distress on
plaintiff for the purpose of forcing her to sell her respective
interests in the Mt. Pleasant partnership and her stock in her
husband's other business ventures with Edward Rosenberg for
amounts less than the purchase price required in the business
agreements. Count 22 alleged that Edward Rosenberg, individu-
ally and as a partner in the law offices of Schurgin and
Rosenberg, did wilfully conspire to intentionally inflict emo-
tional distress on plaintiff so as to force plaintiff to sell her

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4-6, 17.
Right to recover for emotional disturbance or its physical conse-
quences, in the absence of impact or other actionable wrong. 64
ALR2d 100.
[2, 3] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance § 7.
Civil liability for insulting or abusive language—modern status. 20
ALR4th 773.
[4] 61A Am Jur 2d, Pleading § 230 et seq.
[5] 73 Am Jur 2d, Summary Judgment § 4.
[6, 7] 73 Am Jur 2d, Summary Judgment §§ 26, 27.
Propriety of granting summary judgment in case involving issue of
gross or wanton negligence. 50 ALR2d 1309.
[7] 73 Am Jur 2d, Summary Judgment §§ 41, 44.
[8] 16 Am Jur 2d, Conspiracy § 2.
[9] 16 Am Jur 2d, Conspiracy § 19.
74 Am Jur 2d, Torts § 61 et seq.

interest in the Mt. Pleasant partnership and her common stock in her husband's other business ventures for less than the purchase price as prescribed in the various partnership and business agreements. Counts 23-31 alleged that Edward Rosenberg and his son-in-law, Richard Agree, as partners in the Mt. Pleasant Shopping Center, did breach certain contracts and fiduciary duties, and failed to comply with the Mt.Pleasant Shopping Center partnership agreement. Specifically, plaintiff's complaint alleged that, after Jack Rosenberg's death, Edward Rosenberg and Richard Agree acted in violation of critical terms of the partnership agreement by failing to follow the procedures for buying out a deceased partner's share. Further, plaintiff's complaint alleged that defendants violated their fiduciary duties by misappropriating partnership funds to make unapproved investments, the profits from which were never allocated to the deceased partner's share. Plaintiff requested the court to declare defendants to be constructive trustees for the misappropriated partnership funds, any resulting profits, and to require a full accounting of the fund and profits. The trial court, John N. O'Brien, J., granted summary judgment for defendants on counts 23-31 and plaintiff appealed. The court then granted summary judgment for defendants on counts 21 and 22 and plaintiff appealed. The appeals were consolidated by the Court of Appeals. *Held:*

1. One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. Liability for intentional infliction of emotional distress exists only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

2. The trial court did not specify the reason for granting summary judgment, so the Court of Appeals looked to see if summary judgment was properly granted for any reason.

3. A court, in determining whether to grant summary judgment for failure to state a claim in an action alleging intentional infliction of emotional distress, must look to the context in which the alleged offensive conduct occurred. What may be extreme and outrageous in one circumstance may be justifiable under a different circumstance. Plaintiff alleged specific acts of misconduct against Edward Rosenberg in count 21. Edward

Rosenberg was not only the brother of Charlotte Rosenberg's deceased husband, he also had complete control of the records, books, and business affairs of which Jack Rosenberg played a part. Additionally, plaintiff was dependent upon defendant for information relating to decedent's estate, and for her own income. If plaintiff was able to demonstrate the allegations made in her complaint, the question of whether the allegations were sufficiently outrageous to constitute the tort of intentional infliction of emotional distress should have been left to the trier of fact. Therefore, under the above criteria, plaintiff's claim was not so clearly unenforceable as a matter of law as to warrant dismissal for failure to state a claim.

4. A motion for summary judgment for the reason that except as to the amount of damages there is no genuine issue of material fact should be granted only where it is obvious that the nonmoving party's case is subject to some deficiency which cannot be overcome at trial. In order to dismiss count 21 for this reason, it was necessary for the trial court to have decided either (1) that the acts complained of were not sufficiently "outrageous", or (2) that defendant did not act with the intent to cause severe emotional distress. These are both questions of material fact. The court improperly granted partial summary judgment for the reason that there was no material issue of fact.

5. A conspiracy is a combination of two or more persons, by some concerted action, to accomplish an unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. All those who, in pursuance of a common plan to commit a tortious act, actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the acts done for their benefit, are equally liable with him. It is essential that each particular defendant who is to be charged with responsibility shall be proceeding tortiously, which is to say with intent to commit the tort or with negligence. One who innocently does an act which furthers the tortious purpose of another is not acting in concert with him. Under count 22 of plaintiff's complaint, only defendant Edward Rosenberg can be said to have acted with the necessary intent to inflict severe mental and emotional distress. But he had been so charged under count 21. The remaining defendants' conduct, however, were privileged. Their acts were legally performed, and no one act could be termed outrageous. The court properly granted summary judgment on Count 22.

6. The trial court improperly granted summary judgment on

counts 23-31. There were ambiguities in the partnership agreement and there were conflicting interpretations over material facts in dispute.

Affirmed as to count 22 and reversed as to counts 21 and 23-31.

1. Torts — Intentional Infliction of Emotional Distress.

Intentional infliction of emotional distress is a separate cause of action which is not necessarily parasitic to another cause of action as an aggravating element of damages.

2. Torts — Intentional Infliction of Emotional Distress.

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and, if bodily harm to the other results from it, for such bodily harm.

3. Torts — Intentional Infliction of Emotional Distress.

Liability for intentional infliction of emotional distress exists only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

4. Torts — Intentional Infliction of Emotional Distress.

A court, in determining whether to grant summary judgment for failure to state a claim in an action alleging intentional infliction of emotional distress, must look to the context in which the alleged offensive conduct occurred; what may be extreme and outrageous in one circumstance may be justifiable under a different circumstance.

5. Judgments — Summary Judgment — Issues of Material Fact — Intent — Court Rules.

Summary judgment based on failure to state a genuine issue of material fact is hardly ever appropriate in cases involving questions of intent, credibility, or state of mind (GCR 1963, 117.2[3]).

6. Judgments — Summary Judgment — Issues of Fact — Trial by Affidavit — Jury Trial — Court Rules.

A trial court, in granting summary judgment because no issue of fact exists, should be careful to avoid substituting a summary hearing for a trial (GCR 1963, 117.2[3]).

7. JUDGMENTS — SUMMARY JUDGMENT — ISSUES OF FACT — TORT
   CASES — COURT RULES.

A motion for summary judgment for the reason that except as to
the amount of damages there is no genuine issue of material
fact should be granted only where it is obvious that the
nonmoving party's case is subject to some deficiency which
cannot be overcome at trial; courts should be liberal in finding
that genuine issues of material fact do exist (GCR 1963,
117.2[3]).

8. CONSPIRACY — DEFINITIONS.

A conspiracy is a combination of two or more persons, by some
concerted action, to accomplish an unlawful purpose or to
accomplish a lawful purpose by criminal or unlawful means.

9. CONSPIRACY — TORTS — LIABILITY.

All those who, in pursuance of a common plan to commit a
tortious act, actively take part in it and further it by cooper-
ation or request, or who lend aid or encouragement to the
wrongdoer, or ratify and adopt the acts done for their benefit,
are equally liable with him.

*Rubenstein, Isaacs, Lax & Bordman, P.C.* (by
*Erwin A. Rubenstein* and *Barbara Cohn Norman),*
and *Weisman, Trogan & Young, P.C.* (by *Anthony
V. Trogan, Jr.),* for plaintiffs.

*Curtis G. Rundeil, II, P.C.* (by *Curtis G. Rundell),*
for defendant.

Before: ALLEN, P.J., and V. J. BRENNAN and
R. M. DANIELS,* JJ.

ALLEN, P.J. Plaintiff, Charlotte Rosenberg, is the
widow of Jack Rosenberg and the personal repre-
sentative of his estate. At the time of his death on
July 7, 1977, Jack Rosenberg was involved in
numerous corporations, partnerships, and business
ventures with, *inter alia,* his brothers Edward
Rosenberg, Al Rosenberg, and Lester Rosenberg,
and their accountants and attorneys.

* Circuit judge, sitting on the Court of Appeals by assignment.

After Jack Rosenberg's death, negotiations between plaintiff and defendants began to determine the extent of Jack Rosenberg's estate, and the estate's interests in the business enterprises named as defendants herein. The negotiations did not produce a mutually acceptable settlement, and plaintiff filed a 22-count complaint, individually and as executrix of the estate, in the Oakland County Circuit Court on August 20, 1980, alleging, *inter alia,* breach of contracts, breach of fiduciary duties, causes of action for dissolution, and intentional infliction of emotional distress. On September 17, 1981, plaintiff filed her second amended complaint, incorporating her first complaint by reference, and adding an additional nine counts relating to the Mt. Pleasant Shopping Center, a Michigan partnership of which Jack Rosenberg was a partner. After amendments, plaintiff's complaint totaled 31 counts, consisting of 367 paragraphs, in accordance with GCR 1963, 113.3. Mercifully, however, the instant appeal involves only counts 21 through 31.

Defendants thereafter filed two motions for partial summary judgment pursuant to GCR 1963, 117.2, subds (1) and (3), seeking to have counts 21 through 31 stricken from the complaint. Count 21 alleged that Edward Rosenberg intentionally and maliciously engaged in a course of extreme and outrageous conduct to inflict severe emotional distress on plaintiff for the purpose of forcing her to sell her respective interests in the Mt. Pleasant partnership and her common stock in Friendship Materials, Friendship Plaster, Lakeland, Dealer Sales, and MECA Associates for amounts less than the purchase price required in accordance with the Mt. Pleasant partnership agreement and other named business agreements. In support of said

allegations, plaintiff set forth instances (a) through (z) of specific misconduct on the part of defendant Edward Rosenberg towards plaintiff.

Count 22 alleged that defendants Edward Rosenberg, Al Rosenberg, Lester Rosenberg, Robert Boesky (Edward Rosenberg's son-in-law), Leon Schurgin, and Howard Rosenberg (Edward Rosenberg's son, individually and as partners in the law offices of Schurgin and Rosenberg, did wilfully conspire to intentionally inflict emotional distress on plaintiff so as to force plaintiff to sell her interest in the Mt. Pleasant partnership and her common stock in Friendship Materials, Friendship Plaster, Lakeland, Dealer Sales, and MECA Associates for less than the purchase price as prescribed in the various partnership and business agreements. In support of this allegation, plaintiff set forth specific instances (a) through (z) of misconduct of said named defendants.

Counts 23 through 31 alleged that defendants Edward Rosenberg and his son-in-law, Richard Agree, as partners in the Mt. Pleasant Shopping Center, did breach certain contracts and fiduciary duties, and failed to comply with the Mt. Pleasant Shopping Center partnership agreement. Specifically, plaintiff's complaint alleged that, after Jack Rosenberg's death, Edward Rosenberg and Richard Agree acted in violation of critical terms of the partnership agreement by failing to follow the procedures for buying out a deceased partner's share. Further, plaintiff's complaint alleged that defendants violated their fiduciary duties by misappropriating partnership funds to make unapproved investments, the profits from which were never allocated to the deceased partner's share. Plaintiff requested the court to declare defendants to be constructive trustees for the misappropriated

partnership funds, any resulting profits, and to require a full accounting of the fund and profits.

Following a hearing held on February 16, 1983, the trial court granted summary judgment on defendants' motions. On April 6, 1983, an order was entered by the trial court dismissing counts 23 through 31 (Mt. Pleasant Shopping Center partnership agreement). Plaintiff appealed as of right from this order in Docket No. 70976. On May 31, 1983, the trial court entered an order dismissing counts 21 and 22 (intentional infliction of emotional damage). Plaintiff appealed as of right from this order in Docket No. 72067. The two appeals were consolidated by order of this Court on July 1, 1983.

Defendants' motion for summary judgment, seeking to have counts 21 and 22 dismissed, was brought pursuant to GCR 1963, 117.2, subds (1) and (3). The trial court granted the motion explaining its reasons for so doing as follows:

"I have read and re-read the two counts in question. And, as Mr. Trogan said, there's two sides to every question. But, when I read counts 21 and 22 I'm only reading the plaintiff's side.

"I think that those two counts, 21 and 22, claims of intentional infliction of mental distress, do not in my judgment, present the type of gross or outrageous or shocking conduct required under the law of Michigan, if proved, even if proved to the satisfaction of the fact-finder, the court or the jury, to support such a claim. I think rather they do present the taking of opposite positions on the legal relationship and the effect thereof that resulted by the unfortunate demise of the plaintiff's husband.

"I think summary judgment of dismissal should be, and will be granted, with regard to counts 21 and 22."

Because it is unclear whether the court based its

ruling on GCR 1963, 117.2, subds (1) or (3), an analysis of the court's ruling under both subsections is necessary. We shall do so, first as to count 21 and then as to count 22.

### Count 21—Defendant Edward Rosenberg

Before determining whether Edward Rosenberg's conduct (a) as a matter of law did not, or (b) as a matter of fact could not, constitute the offense of intentional infliction of emotional distress, it is necessary to identify the offense itself. This Court has held that intentional infliction of emotional distress is a separate cause of action which is not necessarily parasitic to another cause of action as an aggravating element of damages. *Holmes v Allstate Ins Co,* 119 Mich App 710, 714; 326 NW2d 616 (1982); *Ross v Burns,* 612 F2d 271 (CA 6, 1980). We have explicitly adopted the definition found in the Restatement Torts, 2d, § 46, pp 71-72, which provides:

" '(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. * * *'

"See *Ross v Burns, supra,* p 273; *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 390; 239 NW2d 380 (1976); *Frishett v State Farm Mutual Automobile Ins Co,* 3 Mich App 688, 692; 143 NW2d 612 (1966), *lv den* 378 Mich 733 (1966).

"As explained in the Restatement, § 46, comment d, p 73:

" 'It has not been enough that defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability

has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

" 'The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' See *Warren, supra,* pp 390-391." 119 Mich App 714-715.

Under the above settled definition, it is clear that the conduct in question must be extreme and outrageous. Thus, under GCR 1963, 117.2(1) the critical issue is whether Edward Rosenberg's conduct is extreme and outrageous, or whether, as defendants contend, his actions merely rose to the level of insult, indignity, threat, and annoyance. A motion based on subsection (1) challenges the legal sufficiency of the claim and is to be considered by an examination of the pleadings alone. In so doing the reviewing court must take plaintiff's factual allegations as true, along with those inferences and conclusions that may be fairly drawn therefrom, and determine whether defendant's conduct must, *as a matter of law,* be classified *not* extreme and outrageous so as to make plaintiff's claim unenforceable.

In making this assessment under GCR 1963, 117.2(1), it is essential to look to the context in which the alleged offensive conduct occurred, for what may be extreme and outrageous under one set of circumstances may be justifiable under different circumstances.

"It is essential in making this assessment to look to the context in which the remarks were made. Although

the Restatement acknowledges that the law in this area is in a stage of development, it points toward a contextual approach. For example, the extreme and outrageous character of the conduct may arise from the position of the actor, his relation to the distressed party, or from his knowledge of peculiar susceptibilities of the distressed party. Moreover, where the actor does no more than insist upon his own legal rights, liability will not be imposed. 1 Restatement Torts, 2d, § 46, comments e-g, pp 74-76." *Ledsinger v Burmeister,* 114 Mich App 12, 19; 318 NW2d 558 (1982). (Footnote omitted.)

Plaintiff's complaint, in ¶¶ 179 and 180, describes more than 26 instances where defendant Edward Rosenberg exerted his position over the recently widowed Charlotte Rosenberg to browbeat her into submission. Edward Rosenberg was not only the brother of Charlotte Rosenberg's deceased husband, he also had complete control of the records, books, and business affairs in which Jack Rosenberg played a part. Additionally, plaintiff was dependent upon defendant for information relating to decedent's estate, and for her own income. If plaintiff is able to demonstrate the allegations made in her complaint, the question of whether the allegations are sufficiently outrageous to constitute the tort of intentional infliction of emotional distress should be left to the trier of fact. Therefore, under the above criteria, plaintiff's claim was not so clearly unenforceable as a matter of law as to warrant dismissal under 117.2(1).

An easier question is presented when we look to determine whether summary judgment was properly granted under GCR 1963, 117.2(3). In order to dismiss under 117.2(3), it was necessary for the trial court to have decided either (1) the acts complained of were not sufficiently "outrageous" or (2) that defendant did not act with the intent to

cause severe emotional distress. As these are both questions of material fact, the court improperly granted partial summary judgment. Whether defendant's acts were sufficiently outrageous depends upon the context in which the acts were committed. This issue was discussed above. Regarding defendant's intent, summary judgment is not appropriate in cases involving intent, credibility, or state of mind. *Tumbarella v Kroger Co,* 85 Mich App 482, 492; 271 NW2d 284 (1978).

When summary judgment is claimed for lack of factual merit, the court must be careful not to substitute a summary hearing for a trial. The trial may be avoided only if the record shows that an essential element of proof of the claim cannot be supplied. The court must be satisfied that it is impossible for the claim to be supported at trial because of some deficiency which cannot be overcome. *Rizzo v Kretschmer,* 389 Mich 363, 371; 207 NW2d 316 (1973). The court should be liberal in finding that a genuine issue exists, and must give the benefit of any reasonable doubt to the opposing party. *Rizzo, supra; Northern Plumbing & Heating, Inc v Henderson Brothers, Inc,* 83 Mich App 84; 268 NW2d 296 (1978).

Having decided that plaintiff's claim against Edward Rosenberg was not so clearly unenforceable either as a matter of law or of fact as to warrant dismissal, the trial court's order of summary judgment is reversed and plaintiff's count 21 is reinstated.

COUNT 22—EDWARD ROSENBERG, AL ROSENBERG,
LESTER ROSENBERG, ROBERT BOESKY, LEON
SCHURGIN, AND HOWARD ROSENBERG, INDIVIDUALLY
AND AS PARTNERS IN SCHURGIN AND ROSENBERG

Count 22 alleges that the above-named defen-

dants conspired together to intentionally inflict emotional and mental distress upon plaintiff. Are the allegations sufficient as a matter of law under GCR 1963, 117.2(3)?[1] We think not.

A conspiracy is a combination of two or more persons, by some concerted action, to accomplish an unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. *Fenestra, Inc v Gulf American Land Corp,* 377 Mich 565, 593; 141 NW2d 36 (1966); *Bloss v Paris Twp,* 10 Mich App 497, 502; 159 NW2d 867 (1968). All those who, in pursuance of a common plan to commit a tortious act, actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him. Prosser, Torts (4th ed), § 46, p 292.

It is essential that each particular defendant who is to be charged with responsibility shall be proceeding tortiously, which is to say with intent to commit the tort or with negligence. One who innocently does an act which furthers the tortious purpose of another is not acting in concert with him. Prosser, *supra.*

Under count 22 of plaintiff's complaint, only defendant Edward Rosenberg can be said to have acted with the necessary intent to inflict severe mental and emotional distress. But he has been so charged under count 21. The remaining defendants' conduct, however, were privileged. Their acts were legally performed, and no one act could

---

[1] While defendants' motion was brought under subsections 1 and 3, it is clear that defendants relied solely on subsection 3. Thus, unlike the situation as to counts 21 and 22, it is unnecessary to determine whether summary judgment under subsection 1 would have been proper.

be termed outrageous. It is the totality of the acts and the context in which they were performed which warrant reinstating count 21 against Edward Rosenberg. There is no allegation, however, that the remaining defendants acted with a knowledge of all the other acts complained of, or that each defendant acted with intent of furthering Edward Rosenberg's tortious purposes. Further, the other defendants were not in a position of authority or power to affect plaintiff's affairs, nor were any of the other defendants in a direct relationship with plaintiff. Although plaintiff's complaint indicates that each defendant acted on behalf of Edward Rosenberg, a legal act, innocently performed, which furthers the tortious purpose of another is not action in concert with him. Prosser, *supra*. Based on the foregoing, we conclude that the trial court did not err in granting summary judgment under GCR 1963, 117.2(1) as to count 22.

Similarly, we conclude that the trial court did not err in striking count 22 under 117.2(3). Unlike the situation in count 21 as to Edward Rosenberg, the "totality of the acts" analysis is not controlling as to the remaining defendants. There is no indication that any of the remaining defendants acted with a knowledge of the totality of the acts complained of or intended to further a tortious purpose. None were in as close a relationship as Edward Rosenberg or in a position of authority with plaintiff or in control of plaintiff's affairs. Further, each individual act alleged was not sufficiently outrageous *in itself* to constitute intentional infliction of emotional distress. Therefore, count 22 was properly dismissed pursuant to 117.2(3).

Counts 23-31—Mt. Pleasant Shopping Center
Partnership Agreement

Counts 23 through 31 allege that Edward Rosenberg and his son-in-law, Richard Agree, as partners with plaintiff's deceased husband, Jack Rosenberg, in the Mt. Pleasant Shopping Center, failed to abide by the terms of the partnership agreement prescribing what steps should be followed if the surviving partners wished to buy the interest of a deceased partner. The procedure to be followed for purchasing a deceased partner's share is found in ¶ 13 of the partnership agreement. It provides in relevant part:

"13. *Death of a Partner.*
"(a) In the event of the death of a member of this partnership, *the surviving Partners may, within one hundred twenty (120) days* after the death of the Partner, *purchase the deceased Partner's interest in this partnership, upon payment* to the deceased Partner's personal representatives *of an amount* which shall be the sum of:
"(i) Credits to the decedent on the partnership's books for loans made to the partnership;
"(ii) Undistributed profits to the date of death;
"(iii) The value of the deceased Partner's interest in the partnership and its assets, including his capital account as of the date of death, if any, but exclusive of the amounts of preceding items (i) and (ii) * * *
"Interest shall accrue on such amount at seven (7%) percent per annum from the date of death and shall be paid quarter-annually and without regard to the earnings of the partnership. Items (i) and (ii) shall be determined by the certified public accountants retained by the partnership by reference to the books of account.
"(b) If the parties to the sale cannot agree upon the value of item (iii) within fifteen (15) days after the determination of the preceding items (i) and (ii) by the

said certified public accountants, then the value thereof shall be determined by appraisal in the following manner:

"(i) Within seven (7) days after the expiration of the aforementioned fifteen (15) day period, one appraiser each shall be selected by the surviving Partners and by the representative of the deceased Partner, and written notice thereof shall be given to the other party, and said two appraisers' determination as to value shall be conclusive and binding.

"(ii) In the event either party fails or refuses to select an appraiser and give notice thereof within the seven (7) day period mentioned in the preceding subparagraph (i), the determination of value made by the appraiser selected by the other party shall be conclusive and binding upon both parties.

"(iii) If two appraisers are selected in the foregoing manner but cannot agree on a determination of value within fifteen (15) days after the expiration of the seven (7) day period mentioned in subparagraph (i), then said two appraisers shall select a third appraiser, whose determination of value shall be conclusive and binding upon both parties.

"(iv) If the said two appraisers cannot agree upon a third appraiser within ten (10) days after the expiration of the fifteen (15) day period mentioned in preceding subparagraph (iii), then such third appraiser shall be appointed by the Presiding Judge of Wayne County, Michigan, upon petition of either party.

"(v) The cost of such appraisal shall be borne one-half (1/2) by each party.

"(c) If the surviving Partners have not exercised their option to buy within the time set forth in subparagraph (a), then the deceased partner's interest in this partnership may be sold to any third party. Any purchaser must agree to continue this partnership with the surviving Partners upon the same terms and conditions as herein contained.

"(d) The purchase price determined hereunder shall be payable in no more than ten (10) equal annual installments, the first to be made within thirty (30) days after the determination of the purchase price. The

purchase price may be prepaid at any. time without penalty." (Emphasis supplied.)

It is not disputed that Edward Rosenberg and Richard Agree notified plaintiff of their intent to purchase Jack Rosenberg's interest in the shopping center. What is disputed is whether mere notice of intent to purchase followed by inability of the parties to agree upon the purchase price (as provided in paragraph 13[b]) would automatically terminate plaintiff's interest leaving nothing more to be done except to have the certified public accountants determine the value by following the procedure set forth in subparagraphs (b) (i through v). On appeal the defendants argue—and the trial court agreed in ruling on the motion—that notice to purchase terminated plaintiff's interest in the partnership. The trial court ruled:

"The court does conclude, and I guess this is in the nature of a partial summary judgment, I conclude at this time that an election to purchase the deceased partner's share was made by the surviving partners and that no operation of law or equity or buy-out agreement canceled that election. This suit only remains to determine if indeed a price was struck at $106,000.00 or was not; if not, then what price should be paid. Of course, the agreement for the appraisers will control what that price is and it's not limited to Mt. Pleasant or anything. It's a 25 percent share of the partnership at the time that Jack died in 1977.
"Thank you gentlemen."

Plaintiff argues that issues of fact exist as to what the partnership agreement provided and whether defendants in fact followed the terms of the agreement. We agree with plaintiff. On its face, the agreement appears to require payment

within 120 days in order to purchase the decedent's share. Notice alone, therefore, would be insufficient to terminate plaintiff's interest, and both parties agreed that payment was not made. Subparagraph 13(b) of the agreement states what steps are to be followed in determining the value of decedent's share. It is clearly possible to complete the necessary appraisal procedures and determine a binding price within the 120-day period specified in 13(a). Both parties agreed, however, that neither party attempted to utilize the appraisal procedures.

Further, subparagraph 13(c) states:

"(c) *If* the *surviving Partners have not exercised their option to buy within the time set forth in subparagraph (a), then the deceased Partner's interest* in this partnership *may be sold to any third party.* Any purchaser must agree to continue this partnership with the surviving Partners upon the same terms and conditions as herein contained." (Emphasis supplied.)

The agreement is unclear as to what constitutes "exercis[ing] their option to buy within the time set forth in subparagraph (a)". Defendants argue that mere notice to plaintiff of their intent to purchase is sufficient. Plaintiff claims that the option is only exercised upon payment to plaintiff within 120 days of the deceased partner's death of the amount as determined under subparagraph (b). Subparagraph (c) clearly states that, if the option to buy is not exercised within 120 days, plaintiff's interest continues, and plaintiff may then sell that interest to a third party. It should be noted that plaintiff could not sell decedent's interest under subsection (c) if that interest terminated upon mere notice. Defendants did not pay plaintiff

within 120 days,[2] nor did defendants attempt to utilize the appraisal procedures. The result being that, according to defendants, plaintiff has neither the money, nor an interest in the partnership, and defendants can indefinitely continue to refuse to pay since no penalty accrues for late payment.

Further ambiguities exist in subparagraph 13(d), which states:

> "(d) The purchase price determined hereunder shall be payable in no more than ten (10) equal annual installments, the first to be made within thirty (30) days after the determination of the purchase price. The purchase price may be prepaid at any time without penalty."

If 13(a) requires payment within 120 days, 13(d) indicates that full payment within 120 days is not required and defendants can pay the purchase price in installments.

The ambiguities in the partnership agreement and plaintiff's and defendants' conflicting interpretations need not, and should not, be resolved by this Court. More importantly, they should not have been resolved by the trial court. If plaintiff's interpretation is correct, counts 23 through 31 of her complaint state a valid cause of action and should not have been stricken. The conflicting interpretations of the agreement are over material facts in dispute, going to the heart of the agreement.

The trial court is required to be liberal in finding that a genuine issue exists, and must give the

---

[2] Defendants made a check payable to plaintiff within the 120-day period but did not tender the check. Further, a question is raised as to whether funds in the account on which the check was drawn were sufficient. Defendants contend the account was sufficient; plaintiff claims it was not.

benefit of any reasonable doubt to plaintiff. *Rizzo, supra.* This the trial court failed to do. Accordingly, we reverse and reinstate counts 23 through 31 in plaintiff's complaint.

The trial court's grant of summary judgment is affirmed as to count 22, and is reversed as to count 21, and counts 23 through 31. Counts 21 and 23 through 31 are reinstated. No costs, neither party having prevailed in full.