# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLY HATCHER,

       Plaintiff-Appellee,

v

LIBERTY MUTUAL INSURANCE COMPANY,

       Defendant-Appellant.

UNPUBLISHED
April 13, 2017

No. 330062
Macomb Circuit Court
LC No. 2013-003906-NF

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Plaintiff sued her no-fault insurer for failure to provide benefits. Defendant-insurer brought a motion for summary disposition pursuant to MCR 2.116(C)(10) asserting the absence of a question of material fact on its claim that plaintiff violated a fraud provision in the policy and so was excluded from benefits.[1] The trial court determined that a question of fact existed regarding whether plaintiff violated the provision and so denied the motion. Defendant appealed by leave granted.[2] After a review of the record, we conclude, like the trial court, that there are questions of material fact and so affirm.

## I. FACTUAL BACKGROUND

Plaintiff asserts that she was injured in an automobile accident on November 25, 2012 and so is entitled to personal injury protection benefits pursuant to her no-fault insurance policy with defendant. Plaintiff asserts that her injuries resulted in her undergoing a cervical discectomy and fusion surgery on December 26, 2013 and that she continues to suffer from sequelae of her injuries. Defendant responds that even if plaintiff was injured as claimed, she made fraudulent representations concerning her loss, and, as stated in defendant's brief, the

---

[1] Although defendant's motion was also filed under MCR 2.116(C)(8), it did not raise any argument that plaintiff's case should be dismissed on the pleadings, and defendant relies heavily on assertions of fact and evidence.

[2] *Hatcher v Liberty Mutual Ins Co*, unpublished order of the Court of Appeals entered January 27, 2016 (Docket No. 330062).

"policy excludes coverage if the insured . . . engages in fraudulent conduct to support a claim for PIP benefits." The exclusion is titled "**FRAUD**" and reads in full:

> **FRAUD**
>
> This policy will not provide coverage under any part of this policy for any insured or any seeking benefits under this policy (whether before or after a loss) who:
>
> **a.** conceals or misrepresents any material fact or circumstance,
>
> **b.** makes false statements or
>
> **c.** engages in fraudulent conduct, any of which relate to a loss, an accident, this insurance or the application for this policy.

In a thorough and careful opinion, the trial court reviewed the policy language and the evidence, concluded that there was a question of fact as to plaintiff's intent and denied the motion.

## II. GOVERNING STANDARDS

There are three relevant standards to our review. In increasing order of specificity, they are (a) the standard of appellate review, (b) the standards governing summary disposition motions, and (c) the standards governing the particular issue raised by defendant, i.e. fraudulent misrepresentation.

## A. APPELLATE REVIEW

"This Court conducts a de novo review of the trial court's decision on summary disposition." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011).[3]

## B. SUMMARY DISPOSITION

Where a motion for summary disposition under MCR2.116(C)(10) is at issue, all evidence and all inferences are viewed in the light most favorable to the nonmoving party. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010); MCR 2.116(G)(5); *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). This Court is liberal in finding a genuine issue of material fact. *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013). Circumstantial evidence can present a factual issue. *Bergen v Baker*, 264 Mich App 376, 387; 691 NW2d 770 (2004). The court may not make findings of fact or weigh credibility in deciding a summary disposition

---

[3] Defendant-appellant's brief does not include a statement of the applicable standard of review as required by MCR 7.212(C)(7).

motion. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994); *Amerisure Ins Co v Plumb*, 282 Mich App 417, 431; 766 NW2d 878, (2009), overruled in part on other grounds by *Rambin v Allstate Ins Co*, 495 Mich 316, 323 n 7; 852 NW2d 34 (2014).

## C. FRAUDULENT MISREPRESENTATION

We have previously interpreted anti-fraud provisions like the one at issue in this case, as barring benefits to an insured who engages in fraud even if he or she would otherwise be entitled to benefits under the policy. See *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423-425; 864 NW2d 609 (2014).[4] When an insurer alleges that it may deny benefits because the insured has engaged in fraudulent conduct the insurer has alleged an affirmative defense. *Mina v Gen Star Indem Co*, 218 Mich App 678, 681; 555 NW2d 1 (1996), rev'd in part on other grounds 455 Mich 866 (1997) and see *Stein v Home-Owners Ins Co*, 303 Mich App 382, 387-388; 843 NW2d 780 (2013) (analyzing a fraud provision in an insurance contract as an affirmative defense).[5] The burden of proving that an insured engaged in fraud is on the insurer. *Stein*, 303 Mich App 387-389 and see *Auto Owners Ins Co v Olympia Entertainment, Inc*, 310 Mich App 132, 146; 871 NW2d 530 (2015) (stating that an insurance company bears the burden of proving that one of the policy's exclusion provisions applies).

In order to prevail on this basis at trial, a defendant must demonstrate fraud by preponderance of the evidence. *Mina*, 218 Mich App at 685 and *Stein*, 303 Mich App at 387-389. As just reviewed, however, at the summary disposition stage, it is not enough that defendant, as movant, demonstrate that it has grounds to assert that plaintiff engaged in fraud; rather, it must show that there was no question of fact but that fraud occurred. For summary disposition to be granted, defendant must show that no rational trier of fact could reach a conclusion other than that plaintiff engaged in fraud. See *West v GMC*, 469 Mich 177, 183; 665 NW2d 468 (2003) (stating that "[a] genuine issue of material fact exists when the record, giving

---

[4] *Bahri* involved a situation where there was "uncontested evidence" that the plaintiff claimed benefits before the accident and was observed performing activities for which she claimed replacement services on the very days she requested them. *Bahri*, 308 Mich App at 425-426. Therefore, we determined that when considering all the facts and inferences in favor of the non-moving party, there was no question of fact as to each of the elements of fraud. *Id.* However, an individual analysis based on the facts of each case is required, and where there is a question of fact as to any of these four elements summary disposition is improper. *Shelton v Auto-Owners Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2017), slip op at 5-6.

[5] While we ultimately conclude that the trial court did not err in denying defendant's motion for summary disposition based on the merits, we also note that defendant did not assert the fraud provision as an affirmative defense in its first responsive pleading in this matter. Typically, the failure to set forth an affirmative defense in a party's first responsive pleading results in a waiver of that affirmative defense. MCR 2.111(F) and *Electrolines, Inc v Prudential Assurance Co*, 260 Mich App 144, 164; 677 NW2d 874 (2003). However, as this issue was not raised by plaintiff in its brief, we decline to rule on that basis.

the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ").

The test for determining whether an insured engaged in fraudulently attempting to prove a loss was articulated in *Mina*, 218 Mich App at 686, where we stated:

> To void a policy because the insured has willfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured *knew* that it was false at the time it was made or that it was made recklessly, *without any knowledge of its truth*, and (4) that the insured made the *material misrepresentation* with the *intention that the insurer would act upon it*. [Emphasis added.]

Thus, to prove that an insured has acted to defraud its insurer the following factors must be shown: (1) that the representation was material; *and* (2) that it was false; *and* (3) that the insured (a) knew of its falsity, *or* (b) made the statement recklessly, i.e. without any knowledge of its truth. Factors 1 and 2 address what was said or done and whether it was true. Factor 3 addresses the state of mind of the person who made the representation and requires a showing of scienter. Intent to defraud is not shown where false statements are made as a result of inadequate memory, unintentional error, confusion, or the like. *Mina*, 218 Mich App at 686.

It is well-settled that in cases involving allegations of fraud, a grant of summary disposition is "rarely appropriate." *Hollowell v Career Decisions, Inc*, 100 Mich App 561, 572–573; 298 NW2d 915 (1980). As we observed in *Goldsmith v Moskowitz*, 74 Mich App 506, 518; 254 NW2d 561 (1977):

> In cases involving state of mind, such as the scienter requirement in fraud, summary judgment will be appropriate in relatively few instances because it will be difficult to foreclose a genuine dispute over this factual question. [Citation and quotations omitted.]

See, also, *Pemberton v Dharmani*, 207 Mich App 522, 529 n 1; 525 NW2d 497 (1994) ("[S]ummary disposition is inappropriate where questions of motive, intention or other conditions of mind are material issues. The existence of good faith is normally a question of fact for the jury . . . ."); *Boyer v Tucker & Baumgardner Corp*, 143 Mich App 361, 366; 372 N.W.2d 555 (1985) (courts should be reluctant to grant summary disposition "in a case . . . which involves a state of mind"); *Tumbarella v The Kroger Co*, 85 Mich App 482, 492; 271 NW2d 284 (1978) ("In cases involving questions of intent, credibility or state of mind, summary judgement is hardly ever appropriate."); *Michigan Nat Bank-Oakland v Wheeling*, 165 Mich App 738, 744–745, 419 N.W.2d 746 (1988); *Rosenberg v Rosenberg Bros Special Account*, 134 Mich App 342, 353; 351 NW2d 563 (1984); *Chonich v Ford*, 115 Mich App 461, 469 n 3; 321 NW2d 693 (1982).

An individual analysis is required based on the facts of each particular case to see if an insurer, based on admissible evidence, has sufficiently shown that there is no question of fact about the alleged fraudulent conduct. *Shelton v Auto-Owners Ins Co*, ___ Mich App ___, ___;

___ NW2d ___ (2017), slip op at 5-7 (contrasting the facts that existed in *Bahri* with the facts in that case where the evidence at most established isolated examples of the plaintiff performing activities inconsistent with a claim for replacement services). In order for defendant to be granted summary disposition it must prove that plaintiff "knowingly and intentionally" stated a falsehood, that the falsehood was material, and that plaintiff did so "with the intent to defraud." *Mina*, 218 Mich App at 686. Defendant is required to show more than simply that plaintiff made a factual mistake, or an honest misstatement. *Id.* It must show that no rational trier of fact could reach a conclusion other than that the four elements necessary for establishing the affirmative defense have been met. *Shelton*, ___ Mich at ___, slip op at 6-7.

## III. APPLICATION OF LEGAL STANDARDS TO THIS CASE

Defendant alleges three instances in which it claims that reasonable minds could not differ in concluding that plaintiff engaged in fraudulently attempting to prove her losses contrary to the anti-fraud exclusion in her policy: 1) statements plaintiff made at her deposition concerning her past medical history, 2) claims for replacement services that plaintiff submitted, and 3) statements plaintiff made in her interrogatories and deposition concerning her work history. We address each allegation in turn.

## A. PAST MEDICAL HISTORY

Defendant argues that statements made by plaintiff at her deposition are inconsistent with plaintiff's medical records. After review of plaintiff's deposition and the medical records, it is clear that the records show, at most, minor inconsistencies with plaintiff's deposition testimony. As an example, defendant cites plaintiff's testimony that she had not had any complaints of neck pain prior to the accident and contrasts that testimony with emergency room records dated September 16, 2006, which record that plaintiff had "mild neck pain." This failure to recall an episode of "mild neck pain" from seven years ago is not sufficient to prove fraudulent intent rather than a failure of memory.[6]

Defendant also points to plaintiff's deposition testimony that she had not experienced any prior back pain from an injury and that she had back pain when she was "younger." Defendant compares this statement with medical records showing that plaintiff had previous incidents of back pain in 2006. Defendant asserts that plaintiff must have been intentionally misrepresenting a material fact when she said she'd had back pain when she was "younger" because defendant reads "younger" to mean "young." A jury may agree and conclude that this statement was an attempt to defraud. However, it is not for the court at a summary disposition motion to interpret what the deponent's statement "really meant." Indeed, to reach the conclusion defendant urges we would have to make an inference in favor of the moving party, something we are barred from doing. *Skinner*, 445 Mich at 162 (determining that an appellate court reviewing a motion for summary disposition must make all legitimate inferences in favor of the nonmoving party).

---

[6] It is fair to say that it would be the rare individual who could recall every ache and pain they told a doctor about seven years earlier. The members of this Court certainly cannot.

Where defendant does correctly identify portions of plaintiff's deposition testimony that are inconsistent with past medical records, defendant fails to present evidence as to how the inconsistency demonstrates that plaintiff knew her statements were false at the time she made them or how they are material. Mistakes of fact or isolated examples of conduct inconsistent with a claim for benefits are not sufficient for an insurer to achieve summary disposition on an allegation that the insured attempted to fraudulently establish a proof of loss. *Shelton*, ___ Mich App at ___, slip op at 7. Moreover, from the outset of this litigation, plaintiff cooperated in the production of her medical records. If she knew such complaints were present in those records she would either have revealed them in deposition or attempted to withhold the records. These circumstances weigh heavily in favor of a finding that the omissions in her deposition were not intended to defraud.

## B. PLAINTIFF'S CLAIM FOR REPLACEMENT SERVICES

Plaintiff's live-in partner, Beckwith Pearson, submitted affidavits of household services for the months of December 2012 through August 2013. They each state that he provided services including: laundry, cleaning, cooking, washing dishes, taking out trash, changing linens, vacuuming, and transporting plaintiff to doctor appointments and state that he worked an average of just under 51 hours per month performing these services for plaintiff. Defendant argues that these affidavits were made with the intent to fraudulently claim replacement service benefits because they are contradicted by Pearson's deposition testimony. In rejecting this argument, the trial court concluded that defendant had taken Pearson's deposition testimony out of context. We agree.

Initially, in his deposition Pearson testified that he started helping plaintiff with household chores immediately after the accident stating that "after the accident I started helping her because she couldn't do a lot of things, like make the beds up and clean up around the house and wash dishes." Later in the deposition, after the discussion turned to inquiries regarding how often plaintiff required assistance with personal needs such as bathing, Pearson was asked if he was "helping [plaintiff] out before [her] neck surgery," to which Pearson stated "no, and she was doing it on her own." Defendant points to this latter testimony as indication that Pearson's affidavits for household services were submitted as part of an attempt to fraudulently claim a benefit. However, Pearson's statement that plaintiff "was doing it on her own" occurred during a portion of the deposition where Pearson had been predominantly questioned about how often plaintiff required assistance with very personal services, such as bathing. In this context, it is reasonable to infer that Pearson understood the question as asking how much help plaintiff required with these sort of personal hygiene tasks immediately after her accident but prior to a later neck surgery. This inference is consistent with Pearson's testimony early in his deposition where he described the various household services he provided to plaintiff immediately after the accident.

Defendant also states that the affidavits of household services are fraudulent because on a handful of occasions plaintiff worked for her employer, Marilyn Weingarden, in a limited capacity after the accident and so, according to defendant, could not have needed assistance herself. However, Weingarden's affidavit specifically states that, after plaintiff's accident, the only services plaintiff was able to provide for her were administering medication and transporting her to various appointments and that this occurred on only 13 days over many

months. That plaintiff occasionally assisted Weingarden while receiving help herself is hardly inconsistent and is not grounds to conclude on summary disposition that her request to defendant for payment to Pearson for his work in doing laundry, cooking, and cleaning the house were attempts to fraudulently claim benefits.

## C. PLAINTIFF'S STATEMENTS CONCERNING HER WORK HISTORY

Defendant asserts that no reasonable juror could fail to conclude that plaintiff made material misstatements about her work history with the intent to defraud. Again, like the trial court, we disagree.

Defendant cites statements made by plaintiff concerning who employed her at what time, some of which were erroneous. The primary error concerned the name of her employer(s) and the dates of her employment with them during the fall of 2012. Initially we note that defendant has not offered an argument as to how the erroneous statements made by plaintiff were material to the amount of the wage loss claim. If the insured is employed as of the date of the accident, her wage loss benefits are defined by the wages earned at that employment. MCL 500.3107 and *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 468; 521 NW2d 831 (1994). Defendant has not, at least to date, argued that plaintiff was unemployed on the date of the accident. Nor has it disputed the affidavit of Weingarden in which she states that plaintiff began working for her, as her home health aide, a week immediately before the accident and was her employee as of the date of the accident. Moreover, defendant does not provide any evidence that plaintiff misrepresented the hourly pay rate or number of hours per day she worked for Weingarden.

Moreover, defendant's arguments regarding fraudulent intent are speculative. There is no evidence of collusion or planning, and defendant has not offered any testimony or statements from Weingarden to contradict her affidavit. At all times in this litigation, plaintiff has signed releases for all of her employment records, IRS records, and unemployment records without objection or delay. Such open disclosure, while not dispositive, certainly weighs against the conclusion that plaintiff was attempting to deceive defendant about her work history or wages.

Turning to the actual statements at issue, the first one noted by defendant is plaintiff's answer to a request to admit and related interrogatory concerning the basis for her wage loss claim. The interrogatory answer stated in full, "At the time of the accident Plaintiff was working as a home health aide. After the accident she was no longer able to perform all of her job duties. She continued to perform all her job duties for a few weeks after the accident, however, her injuries from the accident forced her to stop altogether." We find no evidence cited in defendant's brief to indicate, let alone prove, that this statement was inaccurate.

The second statement noted by defendant was plaintiff's answer to interrogatories concerning her work history. In answer to question #7 plaintiff stated that her employer at the time of the accident was Marilyn Weingarden and that she provided Weingarden with general home care and was paid between $12.00 and $14.50 per hour. As noted, defendant has offered no evidence to dispute this statement, and Weingarden executed an affidavit in which she stated that plaintiff was working for her through the date of the accident providing her with assistance in walking, medication administration, cooking, cleaning, and transportation. The affidavit goes on to state that after the car accident plaintiff "was not able to fulfill her job duties as my care

provider, but only able to perform limited services on 13 days after the accident and that plaintiff could no longer cook, clean, or assist her with movement.  It is difficult to understand, based upon this information, on what basis defendant maintains that plaintiff misstated who her employer was at the time of the accident, what her duties were, and the effects of the accident upon those duties.

Defendant does point out one response in plaintiff's answers to her initial interrogatories that was incorrect.  In that answer, plaintiff stated that she had been working for Weingarden from 2005-2012 when in fact nearly all of that time she had been working as an aide for a different patient, Lew Rose, who died in 2012.[7]  Defendant offers no reason why this mistake in the name of her employer is either material to the claimed benefit or suggests fraud.  Indeed, when shown this interrogatory answer at her deposition, plaintiff immediately corrected it, stating "No.  That's Mr. Rose," and she provided his address.  She explained that Mr. Rose died, that she had to find new employment, and that she thereafter got a job with Weingarden.  Defendant also points out that plaintiff then testified at her deposition that she began working for Weingarden in August, while Weingarden's affidavit states that plaintiff only began working for her eight days before the accident.  Again, defendant does not state how this difference affected the wage loss claim nor how it conclusively demonstrates intentional misrepresentation, rather than a mistake.

Finally, defendant argues that plaintiff made false statements to the IRS and the state agency that oversees unemployment benefits.  We fail to see how an allegedly false statement given to the IRS or a state unemployment agency can be seen as a false statement directed at defendant or this claim.   Moreover, we have reviewed the exhibits on which defendant relies in this regard.  They indicate that the unemployment agency determined that plaintiff received benefits, but should not have, during the period of July 18, 2011 through November 26, 2011.  Defendant does not explain how that is relevant to this claim concerning an accident that took place one year later.   The records also show that plaintiff received benefits from June 16, 2012 through November 17, 2012, which is consistent with her having started work for Weingarden on November 18, 2012.[8]

## V.  CONCLUSION

---

[7] Plaintiff's statements concerning the hours she worked and the amount of money she earned as a home health aide are confirmed by the records in the unemployment agency file.  They establish that during her work for Lew Rose there were multiple weeks in which she earned well over $1,100.

[8] Defendant also notes that plaintiff's 2012 federal tax return does not include a W-2 from Weingarden for the 8 day period of work.  We agree that this fact standing alone constitutes evidence that plaintiff did not work for Weingarden.  However, it is not sufficient to prove beyond a question of fact that she did not do so and that she somehow colluded with Weingarden to obtain Weingarden's affidavit that plaintiff did work for her in order to defraud defendant.

Defendant has the burden of proof on its claim of fraud. In order obtain summary disposition on this basis, defendant must show that, considering all the facts and inferences in favor of the non-moving party, there is no question of fact as to each of the elements of fraud, i.e., (1) the statement was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. *Sheldon*, ___ Mich App at ___, slip op at 5-6. Where there is a question of fact as to any of these four elements, summary disposition is improper. The existence of inconsistent statements in and of themselves is not sufficient to satisfy any of these four factors. It is the rare litigated case in which there are no facts to support the insurer's claim that the insured is not entitled to benefits. However, the mere existence of such facts does not provide a basis to claim, let alone prove, intentional fraud – particularly as a matter of summary disposition.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro